**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELIZABETH O. FELLEMAN,** | |
| *Plaintiff*, | |
| v. | **Civil Action No. 1:23-cv-02994-JMC** |
| **SECURITIES INVESTOR PROTECTION CORPORATION ("SIPC"),** *et al.* | |
| *Defendants*. | |

### <u>DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Securities Investor Protection Corporation ("SIPC"), Claudia Slacik, Josephine Wang, Charles Glover, and Karen Saperstein (together, "Defendants") hereby move to dismiss Plaintiff Elizabeth O. Felleman's Complaint, dated October 10, 2023 (ECF No. 1). Defendants are immune from liability, and even if they were not, all sixteen of Plaintiff's causes of action fail to state a claim upon which relief can be granted.

For these reasons, and as set forth more fully in the attached Statement of Points and Authorities filed pursuant to LCvR 7(a), Defendants respectfully request that the Court grant this Motion and dismiss Plaintiff's Complaint in its entirety with prejudice. At the conclusion of briefing, Defendants are available at the Court's convenience for oral argument on this Motion if the Court would like the parties to present their arguments. This Motion is accompanied by a proposed order pursuant to LCvR7(c).

Dated: December 18, 2023

Respectfully submitted,

*/s/ Carson H. Sullivan*

Carson H. Sullivan (D.C. Bar No. 488139)
carsonsullivan@paulhastings.com
Madalyn K. Doucet (D.C. Bar No. 1600121)
madalyndoucet@paulhastings.com
PAUL HASTINGS LLP
2050 M Street, N.W.
Washington, DC  20036
Telephone:        1(202) 551-1700
Facsimile:        1(202) 551-1705

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ELIZABETH O. FELLEMAN,**

*Plaintiff*,

v.

**SECURITIES INVESTOR PROTECTION CORPORATION ("SIPC"), *et al.***

*Defendants*.

Civil Action No. 1:23-cv-02994-JMC

## DEFENDANTS' STATEMENT OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION.................................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................................ 3

III.  LEGAL STANDARD .......................................................................................... 5

IV.   ARGUMENT ....................................................................................................... 6

    A.   Defendants Are Immune from Liability........................................................ 6

        1.   The Securities Investor Protection Act provides statutory immunity to Defendants ... 6

        2.   Defendants are entitled to official immunity from tort claims ..................................... 9

    B.   Plaintiff's Breach of Fiduciary Duty Claims (Counts I-IV) Fail as a Matter of Law .... 11

        1.   Plaintiff has not plausibly alleged that SIPC owed her a fiduciary duty................... 11

        2.   Plaintiff lacks standing to bring claims for breach of duties owed to the Corporation or its members.................................................................................................................... 15

    C.   Plaintiff Cannot State a Claim for Negligent Infliction of Emotional Distress Against Any of the Defendants (Counts VI, IX, XI, XIII, XV)............................................................. 16

        1.   Plaintiff's NIED claims are barred by the WCA ......................................................... 16

        2.   Plaintiff has not pled facts sufficient to state a claim for NIED under D.C. law ....... 17

    D.   Plaintiff Cannot State A Claim For Negligent Supervision (Count VII) ...................... 20

    E.   Plaintiff's Complaint Does Not State A Catchall Claim For "Common Law Negligence" Against Any Of The Defendants (Counts V, VIII, X, XII, XIV) ...................... 21

        1.   Plaintiff fails to plead any recognized duty that was breached by Defendants .......... 22

        2.   Plaintiff's claims are barred by the economic loss doctrine ....................................... 23

    F.   Plaintiff's Constructive Discharge Claim (Count XVI) Must Be Dismissed .................. 24

V.    CONCLUSION ................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abdelhady v. George Washington Univ.*,
   No. 1:22-CV-01334 (TNM), 2022 WL 17364618 (D.D.C. Dec. 1, 2022) ...................18, 19

*In re Adler, Coleman Clearing Corp.*,
   No. 95-08203 (JLG), 1998 WL 551972 (Bankr. S.D.N.Y. Aug. 24, 1998) ...........................8

*Aguilar v. RP MRP Washington Harbour, LLC*,
   98 A.3d 979 (D.C. 2014) ...................................................................................................23

*Arthur Young & Co. v. Sutherland*,
   631 A.2d 354 (D.C. 1993) .................................................................................................26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................................5

*Atherton v. D.C. Off. of Mayor*,
   567 F.3d 672 (D.C. Cir. 2009) ............................................................................................6

*Barr v. Matteo*,
   360 U.S. 564 (1959)........................................................................................................9, 10

*Behradrezaee v. Dashtara*,
   910 A.2d 349 (D.C. 2006) .................................................................................................15

*Bilal-Edwards v. United Plan. Org.*,
   896 F. Supp. 2d 88 (D.D.C. 2012)................................................................................16, 17

*Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of the United States*,
   258 F. Supp. 3d 1 (D.D.C. 2017) ......................................................................................11

*Briese v. Amerigas, Inc.*,
   No. CV 08-63-BU-RFC-JCL, 2009 WL 10677368 (D. Mont. Sept. 1, 2009) ...................13

*Busby v. Cap. One, N.A.*,
   772 F. Supp. 2d 268 (D.D.C. 2011)...................................................................................20

*C & E Servs., Inc. v. Ashland Inc.*,
   601 F. Supp. 2d 262 (D.D.C. 2009)...................................................................................13

*Carswell v. Air Line Pilots Ass'n Int'l*,
   540 F. Supp. 2d 107 (D.D.C. 2008) ..................................................................................12

*Christian v. Safeway*,
No. CV 20-2954 (JMC), 2022 WL 558183 (D.D.C. Feb. 24, 2022) .........................................6

*Clark v. District of Columbia*,
241 F. Supp. 3d 24 (D.D.C. 2017) ....................................................................................17, 19

*\*Cole v. Powell*,
605 F. Supp. 2d 20 (D.D.C. 2009) ....................................................................................24, 26

*Darrow v. Dillingham & Murphy, LLP*,
902 A.2d 135 (D.C. 2006) ........................................................................................................24

*\*Dickens v. Dep't of Consumer & Regul. Affs.*,
298 F. App'x 2 (D.C. Cir. 2008)...............................................................................................24

*Doe v. United States*,
797 F. Supp. 2d 78 (D.D.C. 2011) ...........................................................................................16

*Dorman v. Higgins*,
821 F.2d 133 (2d Cir. 1987)...................................................................................................9, 10

*In re El San Juan Hotel Corp.*,
149 B.R. 263 (D.P.R. 1992) ......................................................................................................12

*\*Faktor v. United States*,
No. 1:20-CV-263 (CKK), 2021 WL 848686 (D.D.C. Mar. 4, 2021) ......................................23

*\*Farrow v. Cahill*,
663 F.2d 201 (D.C. Cir. 1980)...................................................................................................12

*Griffin v. Acacia Life Ins. Co.*,
925 A.2d 564 (D.C. 2007) .........................................................................................................21

*United States ex rel. Guo v. Nat'l Endowment for Democracy*,
No. 1:18-cv-02986, 2022 WL 503765 (D.D.C. Feb. 18, 2022)................................................12

*\*Harbour v. Univ. Club of Washington*,
610 F. Supp. 3d 123 (D.D.C. 2022) ..........................................................................16, 17, 20

*Hargrove v. AARP*,
205 F. Supp. 3d 96 (D.D.C. 2016) ............................................................................................25

*\*Hedgepeth v. Whitman Walker Clinic*,
22 A.3d 789 (D.C. 2011) .......................................................................................................18, 19

*Hendrix v. CIOX Health*,
No. 1:18-cv-1224, 2019 WL 13273185 (N.D. Ga. Jan. 30, 2019) ...........................................12

*High v. McLean Fin. Corp.*,
    659 F. Supp. 1561 (D.D.C. 1987) ...................................................................................14

*Himmelstein v. Comcast of the Dist., L.L.C.*,
    908 F. Supp. 2d 49 (D.D.C. 2012) ...................................................................................14

*\*Islar v. Whole Foods Mkt. Grp., Inc.*,
    217 F. Supp. 3d 261 (D.D.C. 2016) ...........................................................................18, 21

*Kerrigan v. Britches of Georgetowne, Inc.*,
    705 A.2d 624 (D.C. 1997) ...............................................................................................12

*\*Krukas v. AARP, Inc.*,
    458 F. Supp. 3d 1 (D.D.C. 2020) .....................................................................................16

*\*Kumar v. George Washington Univ.*,
    174 F. Supp. 3d 172 (D.D.C. 2016) ...............................................................................9, 10

*\*Li v. Li*,
    No. CV 20-2008 (JMC), 2023 WL 2784872 (D.D.C. Apr. 5, 2023) ...............................6, 23

*\*Lockhart v. Coastal Int'l Sec., Inc.*,
    905 F. Supp. 2d 105 (D.D.C. 2012) ...........................................................................16, 20

*Meadows v. Hartford Life Ins. Co.*,
    492 F.3d 634 (5th Cir. 2007) ...........................................................................................12

*Millennium Square Residential Ass'n v. 2200 M St. LLC*,
    952 F. Supp. 2d 234 (D.D.C. 2013) .................................................................................15

*MobilizeGreen, Inc. v. Cmty. Found. for the Cap. Region*,
    267 A.3d 1019 (D.C. 2022) ..............................................................................................14

*Moss v. Stockard*,
    580 A.2d 1011 (D.C. 1990) ...........................................................................................9, 10

*\*Multicom Inc. v. Chesapeake & Potomac Tel. Co.*,
    No. CIV.A. 88-1886-OG, 1988 WL 118411 (D.D.C. Oct. 27, 1988) ...................................13

*Norman E. Duquette, Inc. v. Comm'r of I.R.S.*,
    110 F. Supp. 2d 16 (D.D.C. 2000) .....................................................................................8

*\*Overseas Priv. Inv. Corp. v. Industria de Pesco, N.A., Inc.*,
    920 F. Supp. 207 (D.D.C. 1996) .................................................................................13, 15

*Paul v. Jud. Watch, Inc.*,
    543 F. Supp. 2d 1 (D.D.C. 2008) ................................................................................11, 12

*Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*,
    68 A.3d 697 (D.C. 2013) .......................................................22

\*Ramey v. Potomac Elec. Power Co.,
    468 F. Supp. 2d 51 (D.D.C. 2006) .....................................20

*Reid v. Temple Univ. Hosp. Episcopal Campus*,
    No. 17-2197, 2017 WL 5157620 (E.D. Pa. Nov. 7, 2017) ....................12

\*Robinson v. Ergo Sols., LLC,
    85 F. Supp. 3d 275 (D.D.C. 2015) .................................25, 26

\*Robinson v. Howard Univ., Inc.,
    335 F. Supp. 3d 13 (D.D.C. 2018) ....................................18

\*Sec. Inv. Prot. Corp. v. Ambassador Church Fin./Dev. Grp., Inc.,
    788 F.2d 1208 (6th Cir. 1986) ..........................................8

*Sec. Inv. Prot. Corp. v. Barbour*,
    421 U.S. 412 (1975).....................................................3

*Simpson v. Fed. Mine Safety & Health Review Comm'n*,
    842 F.2d 453 (D.C. Cir. 1988)........................................24

*Sony Music Ent., Inc. v. Robison*,
    No. 01 CIV. 6415, 2002 WL 272406 (S.D.N.Y. Feb. 26, 2002) ............13

*Sparrow v. United Air Lines, Inc.*,
    216 F.3d 1111 (D.C. Cir. 2000).........................................6

*Sprecher v. Graber*,
    716 F.2d 968 (2d Cir. 1983)...........................................10

\*Stevens v. Sodexo, Inc.,
    846 F. Supp. 2d 119 (D.D.C. 2012) ................................21, 22

*Tripp v. United States*,
    257 F. Supp. 2d 37 (D.D.C. 2003) ....................................12

*United States v. Chestman*,
    947 F.2d 551 (2d Cir. 1991)..........................................13

\*White v. Washington Intern Student Hous.,
    No. CV 18-2021 (CKK), 2019 WL 1858298 (D.D.C. Apr. 25, 2019) ......18

*Wultz v. Islamic Republic of Iran*,
    755 F. Supp. 2d 1 (D.D.C. 2010) .....................................11

**Statutes**

D.C. Code § 29–406.30.................................................................................11, 15

D.C. Code § 29–406.42.......................................................................................15

D.C. Code § 32-1504(b)......................................................................................20

D.C. Human Rights Act.......................................................................................24

D.C. Nonprofit Corporation Act .....................................................................2, 15

*D.C. Workers' Compensation Act .................................................................2, 16

*Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa *et seq.*................................ *passim*

**Other Authorities**

Restatement (Third) Of Agency § 8.14 (2006)........................................................13

Fed. R. Civ. P.12(b)(6)..........................................................................................6

## I.     <u>INTRODUCTION</u>

As an employee of Defendant Securities Investor Protection Corporation ("SIPC"), Plaintiff Elizabeth O. Felleman disagreed with how SIPC went about the development of a new web portal (the "Portal") for broker-dealers (the "Portal Project"). As set forth in great detail in her Complaint, Plaintiff had many criticisms of members of SIPC's IT Department, other co-workers, and personnel of the third-party software development company hired by SIPC to provide services related to the Portal Project. Compl. ¶¶ 34-36, 38-39, 44-45, 49. She complained internally about her concerns, and then to the Chair of SIPC's Board of Directors in a July 2022 meeting and subsequent September 2022 letter. *Id.* ¶ 58. SIPC retained counsel to investigate Plaintiff's concerns of "fraud, waste, abuse and retaliation," all of which were found to be unsubstantiated. *Id.* ¶¶ 61, 75. Plaintiff, however, did not accept these findings, which were conveyed to her in a November 17, 2022, meeting, and she resigned on December 19, 2022. *Id.* ¶¶ 75, 98. Now, Plaintiff claims she had to resign due to ethical concerns with the Portal, despite the fact that the Portal was not yet in use and still under development at the time of her resignation (and at the time she filed her Complaint). *Id.* ¶ 4.

Despite her voluntary resignation, Plaintiff's sixteen-count lawsuit seeks damages for back pay, lost benefits, front pay, emotional and "physical" distress damages, not only against SIPC, but against the Chair of its Board of Directors and three of its individual officers. Compl. at pp. 88-89. Even accepting her well-pleaded allegations as true, Plaintiff's sprawling 89-page Complaint confirms that neither SIPC nor any of the individual Defendants took any adverse action against Plaintiff at any time. This is probably why Plaintiff does not attempt to bring her claims under any applicable employment statute. There are myriad causes of action under both District of Columbia and federal law that employees may bring if they have been discriminated against,

harassed, or otherwise suffered an adverse action based on a protected characteristic or protected activity. Plaintiff's Complaint makes clear: She does not have such claims against Defendants.

Instead, Plaintiff attempts to transform her disagreements with (and complaints about) SIPC's development and management of the Portal Project into claims for breach of fiduciary and common law duties that do not exist. To allow Plaintiff's Complaint to move forward would (against precedent) condone lawsuits based on any number of workplace disagreements related to business strategy, technical implementation, or project budgeting. There is no recognized cause of action based on these facts and Plaintiff should not be permitted to manufacture one here. For the reasons stated below, Plaintiff's Complaint should be dismissed in its entirety.

First and foremost, Defendants are immune from liability under SIPC's enabling statute and under the doctrine of official immunity. *See infra* Section IV(A)(1)-(2). Even if they were not, however, Plaintiff still fails to state a claim upon which relief can be granted. Her claims against SIPC for breach of fiduciary (Counts I-IV) fail because she cannot plausibly allege that SIPC, as her employer, owed her a fiduciary duty as an employee, and because she lacks standing to bring claims under the D.C. Nonprofit Corporation Act to which she cites. *See infra* Section IV(B)(1)-(2). Plaintiff's claims for injuries arising out of her employment based on negligent infliction of emotional distress (Counts VI, IX, XI, XIII, and XV) and negligent supervision (Count VII) are barred by the exclusive remedy provision of the D.C. Workers' Compensation Act ("WCA"), *see infra* Section IV(C)(1) and IV(D), and even if they were not, Plaintiff has failed to plead facts sufficient to state a claim for either cause of action under D.C. law, *see infra* Section IV(C)(2) and IV(D). Plaintiff's attempted catchall common law negligence claims against each Defendant also fail: Plaintiff has failed to plead any recognized duty that was breached by Defendants, *see infra* Section IV(E)(1), and her claims are barred by the economic loss doctrine, *see infra* Section

IV(E)(2). Finally, Plaintiff's "constructive discharge" claim (Count XVI) is not an independent cause of action and cannot stand under D.C. law. *See infra* Section IV(F). For all these reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety.

## II.     FACTUAL BACKGROUND[1]

SIPC is a non-profit corporation created by Congress to which most registered broker-dealers must belong as "members." Compl. ¶ 15; *see also Sec. Inv. Prot. Corp. v. Barbour*, 421 U.S. 412, 416 (1975) (citing 15 U.S.C. § 78ccc). Congress established SIPC "for the purpose…of providing financial relief to the customers of failing broker-dealers with whom they had left cash or securities on deposit." *Barbour*, 421 U.S. at 413. SIPC protects customers by initiating and overseeing liquidation proceedings against member firms when they fail financially and "customer assets are missing." Compl. ¶ 16; *see also Barbour*, 421 U.S. at 416. SIPC is required to maintain resources (the "SIPC Fund") by imposing statutorily required assessments on the gross revenues of its members. *See* 15 U.S.C. § 78ddd(c)(2); *see also* Compl. ¶ 3.

Plaintiff was employed by SIPC as a Manager of Investments in the Finance Department from October 29, 2018, until her resignation on December 19, 2022. Compl. ¶¶ 2, 14, 26, 98. She was responsible for administering SIPC's portfolio of securities, including performing trades and monthly revenue reconciliations, and preparing financial reports. *Id.* ¶ 2. She also posted and approved expenses in SIPC's general ledger. *Id.* ¶ 26.

In 2019, SIPC set out to develop a new web portal to process membership information, the payment and collection of members' assessments, and the submission of member assessment and other forms. Compl. ¶¶ 3, 28. In September 2019, SIPC engaged a third-party software

---

[1] These facts are taken from Plaintiff's Complaint and accepted as true for purpose of Defendants' instant motion to dismiss. Defendants do not concede or admit these facts for any other purpose.

development company, InfernoRed Technology, Inc. ("InfernoRed"), to assist SIPC's IT Department with the Portal Project. *Id.* ¶¶ 3, 28-29, 31. As of the filing of Plaintiff's Complaint, "the Portal was still under development" and was "not expected to go live until the end of 2023." *Id.* ¶ 4.

Almost immediately, Plaintiff had concerns with the way SIPC went about the Portal Project. She worried that the focus on the Project would impair the IT Department's ability to address requests from the Finance Department. Compl. ¶ 34. She complained that the Finance Department did not have access to the Portal database while it was under development. *Id.* ¶ 36. On numerous occasions, she submitted ideas and requests for how the Portal Project could address the Finance Department's needs, which she felt were dismissed or insufficiently addressed. *Id.* ¶¶ 35, 38-39, 44-45, 49.

On July 25, 2022, Plaintiff met with Defendant Claudia Slacik, Chair of the Board of Directors of SIPC, to "voice her concerns" about the Portal Project. Compl. ¶ 58. She followed up with a letter to Defendant Slacik on September 1, 2022, where she raised concerns "regarding the fraud and waste I have observed and to request your help in alleviating the abusive conditions I am experiencing in my position as Manager-Investments in the Finance Department." *Id.* In her letter, Plaintiff raised allegations of fraud, waste, or abuse related to the Portal Project. *See id*. ¶¶ 34-57.

SIPC immediately retained independent outside counsel (Morgan Lewis) to investigate Plaintiff's concerns. Compl. ¶ 61. The investigation concluded that Plaintiff's allegations of fraud, waste, and abuse were all unsubstantiated. *Id.* ¶ 75. SIPC informed Plaintiff of these findings and gave her the opportunity to discuss them with Defendant Slacik and SIPC's General Counsel. *Id.*

Despite the investigation findings, Plaintiff continued to believe that fraud, waste, and abuse existed. *Id.*

After Plaintiff was informed of the results of the investigation, she told Defendant Josephine Wang, SIPC's Chief Executive Officer, that she would not be able to do her job once the Portal was live because "as a CPA she could not rely on the data it provided." Compl. ¶ 76. Defendant Wang asked Plaintiff to explain what she meant; Plaintiff responded with her concern that the interest calculations in the Portal might be inaccurate. *Id.* ¶ 77; *see also id.* ¶ 62. Wang told her that SIPC's legal counsel was addressing this concern, but Plaintiff was not satisfied with this response and insisted that a "finance person" needed to "explain the details on why it doesn't work." *Id.* ¶ 77. Plaintiff also expressed concerns to Wang about: (i) SIPC's use of outdated software such as Windows 7; (ii) SIPC's IT Department Manager being "against [Plaintiff] having information since day one of the Portal Project"; and (iii) Defendant Glover "not…speaking to her, which made it hard to do her job." *Id.* In response, Defendant Wang asked Plaintiff to present her concerns regarding the construction of the Portal to a new third-party IT consultant that would be joining the Project, which she did on December 9, 2022. *Id.* ¶¶ 78-79. After this meeting, Plaintiff "felt there was no forthcoming answer" to the problems she had raised with the Portal Project. *Id.* ¶ 80. Plaintiff notified SIPC of her resignation on December 19, 2022, and her last day of employment was December 30, 2022. *Id.* ¶ 98. The Portal was still under development when Plaintiff resigned, and on October 10, 2023, when she filed her Complaint. *Id.* ¶ 4 ("According to a recent announcement by SIPC, the Portal is not expected to go live until the end of 2023.").

## III.   <u>LEGAL STANDARD</u>

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "must

plead 'factual matter' that permits the court to 'infer more than the mere possibility of misconduct.'" *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (citing *Iqbal*, 556. U.S. at 679). In evaluating a motion to dismiss under Rule 12(b)(6), a court "must treat the complaint's factual allegations as true, . . . and must grant [the] plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted). "That said, a court need not accept 'inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.' …Nor must a court accept 'legal conclusions cast in the form of factual allegations.'" *Li v. Li*, No. CV 20-2008 (JMC), 2023 WL 2784872, at *2 (D.D.C. Apr. 5, 2023) (Cobb, J.) (citing *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). "A complaint that offers nothing more than 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.'" *Christian v. Safeway*, No. CV 20-2954 (JMC), 2022 WL 558183, at *1 (D.D.C. Feb. 24, 2022) (Cobb, J.) (citing *Iqbal*, 556 U.S. at 678).

IV.   **ARGUMENT**

   A.   **Defendants Are Immune from Liability**

   As a threshold matter, Plaintiff's claims should be dismissed in their entirety because Defendants are immune from liability as a matter of law. There are two distinct bases for Defendants' immunity, either of which is independently sufficient to dismiss Plaintiff's Complaint.

   1.   **The Securities Investor Protection Act provides statutory immunity to Defendants**

   SIPC was established by the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa *et seq.* ("SIPA"). SIPA provides that "[n]either SIPC nor any of its Directors, officers, or employees shall have any liability to any person for any action taken or omitted in good faith under

or in connection with any matter contemplated by" SIPA. *Id*. § 78kkk(c). The matters "contemplated by" SIPA include but are not limited to establishing the SIPC Fund, *id.* § 78ddd(a)(1), imposing and collecting member assessments, *id.* § 78ddd(c), addressing over- and underpayments by members in accordance with the statute, including determining the interest rate and any penalties for underpayments, *id.* § 78ddd(e), and submitting "a written report relative to the conduct of its business, and the exercise of the other rights and powers granted by this chapter" to the SEC each fiscal year, *id.* § 78ggg(c)(2). SIPA also empowers SIPC to: "conduct its business (including the carrying on of operations and the maintenance of offices) and to exercise all other rights and powers granted to it by" SIPA, "to elect or appoint such officers, attorneys, employees, and agents as may be required, to determine their qualifications, to define their duties, to fix their salaries," and "to enter into contracts, to execute instruments, to incur liabilities, and to do any and all other acts and things as may be necessary or incidental to the conduct of its business and the exercise of all other rights and powers granted to SIPC" by SIPA. *Id*. § 78ccc(b)(5)-(8); *see also id.* § 78ccc(a)(1)(B) (conferring, except as otherwise provided in SIPA, "all the powers" of a District of Columbia nonprofit corporation).

Here, Plaintiff's own allegations make clear that the actions she complains of were "taken or omitted…under or in connection with…matter contemplated by" SIPA. Indeed, the very first paragraph of Plaintiff's Complaint affirmatively states that "[t]his action arises out of the actions and inactions of SIPC in connection with SIPC's creation and development of a broker-dealer portal." Compl. ¶ 1. "SIPC contracted with InfernoRed…to develop a Portal which was intended to streamline the processing by SIPC of membership information as well as the payment and collection of members' assessments, and to facilitate the submission of member assessment forms." *Id.* ¶ 3. The creation of the Portal (including the retention, payment, and management of

the contract with InfernoRed) is squarely within "matter contemplated by" SIPA. *See* 15 U.S.C. §§ 78ccc(b)(7) (contemplating SIPC hiring agents (including defining their duties and setting their rate of pay) and entering into contracts), 78ddd(a)(1) (contemplating SIPC imposing and collecting member assessments), 78ddd(e) (contemplating SIPC addressing over- and underpayments by members). Thus, neither SIPC nor the individual Defendants can be held liable to Plaintiff for any action taken or omitted in connection with the Portal Project if those actions were "taken or omitted in good faith."[2] *Id.* § 78kkk(c).

While it is very apparent that Plaintiff disagreed with the way SIPC handled the Portal Project, she fails to plead that any of the Defendants were not acting in good faith. *See generally* Complaint. Instead, she merely alleges that Defendants failed to meet her own, subjective standards for how the Portal should have been built and how the Portal Project should have been managed, and she repeats the concerns she raised that led to the investigation. *Id.*[3] This is not enough to overcome SIPA's grant of immunity, and her claims against Defendants should be dismissed in their entirety. *See Sec. Inv. Prot. Corp. v. Ambassador Church Fin./Dev. Grp., Inc.*, 788 F.2d 1208, 1213 (6th Cir. 1986) (reversing and remanding for entry of an order of dismissal where plaintiffs "have not asserted any bad faith on the part of the SIPC"); *see also In re Adler,*

---

[2] For purposes of statutory immunity, "good faith" can be interpreted consistent with the standards and criteria governing the defense of qualified immunity in civil rights actions brought under *Bivens* or Section 1983. *See Norman E. Duquette, Inc. v. Comm'r of I.R.S.*, 110 F. Supp. 2d 16, 22-23 (D.D.C. 2000) (applying objective good faith standard from qualified immunity cases to good faith safe harbor provision of Internal Revenue Code). Thus, SIPA's grant of immunity will extend to actions taken by the Defendants within their discretionary authority where a reasonable person could have believed that those actions were lawful. *See id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[3] Plaintiff repeats over and over again her allegations that she made SIPC aware of her concerns about "*potential*" fraud, waste, and abuse, but notably she never alleges that SIPC or any Defendant actually committed fraud, waste, abuse, or any other action in bad faith. *See* Compl. ¶¶ 6, 59-60, 75, 83, 106, 110, 113, 210, 223, 229, 240, 248 (emphasis added).

*Coleman Clearing Corp.*, No. 95-08203 (JLG), 1998 WL 551972, at *32 (Bankr. S.D.N.Y. Aug. 24, 1998) (granting summary judgment because SIPC was immune from suit), *aff'd sub nom. Adler, Coleman Clearing Corp. v. Mishkin*, 208 F.3d 202 (2d Cir. 2000).

### 2.    Defendants are entitled to official immunity from tort claims

Even assuming for the sake of argument that statutory immunity were not available under SIPA, Defendants are also entitled to absolute immunity from tort claims pursuant to the doctrine of official immunity. *Kumar v. George Washington Univ.*, 174 F. Supp. 3d 172, 176-83 (D.D.C. 2016) (dismissing claims against university carrying out governmental function under official immunity doctrine). The official immunity doctrine grants immunity against common law claims to persons or organizations carrying out discretionary functions pursuant to a federal statute. *See Barr v. Matteo*, 360 U.S. 564, 572-76 (1959). "A principal purpose of official immunity is to prevent 'disruption of governmental functions' by providing immunity to those 'official function[s] [that] would suffer under the threat of prospective litigation.'" *Kumar*, 174 F. Supp. 3d at 176 (quoting *Westfall v. Erwin*, 484 U.S. 292, 296 n.3 (1988)). Official immunity extends to non-governmental entities, such as SIPC, "when they are performing 'official' or 'governmental' functions." *Id.* (citing *Mangold v. Analytic Servs.*, 77 F.3d 1442, 1446–48 (4th Cir. 1996)).[4] It is an *absolute* bar to liability, even in the face of allegations of improper motive, bad faith, and fraud. *See Barr*, 360 U.S. at 575; *Moss v. Stockard*, 580 A.2d 1011, 1020-21 & n. 18 (D.C. 1990) (qualified immunity defense may require a factual inquiry into matters such as the good faith of the official, *but absolute immunity does not*); *Dorman v. Higgins*, 821 F.2d 133, 139 (2d Cir. 1987).

---

[4] Notably, although SIPC is not a government agency, five of its seven-member board of directors, including Defendant Slacik, are nominated by the President of the United States and confirmed by the Senate. The other two members of the Board are designated, respectively, by the Federal Reserve and the Treasury from among their officers and employees. 15 U.S.C. § 78ccc(c)(2).

Absolute immunity applies even when the conduct in question falls within the "outer perimeter" of authority conferred under a federal scheme. *Barr*, 360 U.S. at 575; *Sprecher v. Graber*, 716 F.2d 968, 975 (2d Cir. 1983).

Official immunity attaches to Defendants here because (1) Defendants were performing a delegated "government function" in the course of conduct described in the Complaint, and (2) the conduct complained of "is within the scope of official duties and discretionary in nature." *Kumar*, 174 F. Supp. 3d at 176-77, 180 (citing *Westfall*, 484 U.S. at 297-98). Where an entity undertakes a function pursuant to a federal duty or has been delegated a responsibility by the federal government, as is the case with Defendants' relevant activities, this element is satisfied. *Id.* at 177 (finding university performed government function when conducting fraud investigation pursuant to a federal duty). Conduct is within the scope of official duties, and thus immune from suit, if it falls among the "matters committed by law to [Defendants'] control or supervision." *Id.* at 181 (cleaned up). As discussed above, Defendants undertook the actions described in the Complaint to develop the Portal pursuant to SIPC's official duties and matters committed to SIPC's control or supervision by federal statute. *See supra* Section IV(A)(1) (citing statutory provisions committing hiring of agents and signing of contracts, among other things, to SIPC's control). This element, too, is thus satisfied. Plaintiff's Complaint, accordingly, should be dismissed on the grounds of official immunity. *Id.* at 183 (granting motion to dismiss tort claims on official immunity grounds).[5]

---

[5] Even if the Court were to permit Plaintiff to amend her Complaint to allege specifically that Defendants did not act in good faith such that statutory immunity under SIPA may not attach (*see supra* Section IV(A)(1)), that amendment would be futile because, as stated above, official immunity is an absolute bar to liability, even in the face of allegations of improper motive, bad faith, and fraud. *See Barr*, 360 U.S. at 575; *Moss*, 580 A.2d at 1021; *Dorman*, 821 F.2d at 139.

Additionally, as set forth in detail below, even if immunity were not available here, Plaintiff's claims should be dismissed for failure to state a claim on which relief can be granted.

**B.** **Plaintiff's Breach of Fiduciary Duty Claims (Counts I-IV) Fail as a Matter of Law**

In Counts I-IV, Plaintiff brings four different claims against SIPC "through" each individual Defendant "acting solely on behalf of SIPC" for breach of fiduciary duty.[6] Compl. ¶¶ 100-177. According to Plaintiff, SIPC violated its fiduciary duty to her when each of the individual Defendants failed to meet her expectations of action in response to her concerns about the Portal Project. *Id.* ¶¶ 117, 134-35, 160-61, 175-76. To bring a claim for breach of fiduciary duty, however, Plaintiff must allege sufficient facts to establish (1) SIPC owed Plaintiff a fiduciary duty, (2) SIPC breached that duty, and (3) the breach proximately caused Plaintiff injury. *See Paul v. Jud. Watch, Inc.*, 543 F. Supp. 2d 1, 5-6 (D.D.C. 2008). Plaintiff's breach of fiduciary duty claims should be dismissed because (1) she has not (and cannot) plausibly allege that SIPC owed her a fiduciary duty, (2) she lacks standing to bring claims for breach of fiduciary duties owed to SIPC or its members.

**1.** **Plaintiff has not plausibly alleged that SIPC owed her a fiduciary duty**

First, Plaintiff has not and cannot plead facts sufficient to establish that SIPC owed her a fiduciary duty.[7] It is well established that employers generally do not owe a fiduciary duty to their

_____

[6] To the extent the Court finds Counts I-IV against SIPC duplicative of each other, the duplicative claims are also subject to dismissal under D.C. law. *See Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010) (stating that, "[a]s a matter of judicial economy, courts should dismiss" duplicative claims).

[7] It is worth noting that generally, an organization itself does not and cannot owe fiduciary duties; rather, it is a corporation's *officers and directors* that owe such duties to *the organization* and its members or shareholders. *See* D.C. Code §§ 29-406.30 (duties of directors), 29-406.42 (duties of officers); *Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of the United States*, 258 F. Supp. 3d 1, 22 (D.D.C. 2017) (dismissing breach of fiduciary duty claim against non-profit organization

employees. *See Farrow v. Cahill*, 663 F.2d 201, 205 (D.C. Cir. 1980) (affirming dismissal of breach of fiduciary duty claims by plaintiffs who were found to be "merely employees"); *Carswell v. Air Line Pilots Ass'n Int'l*, 540 F. Supp. 2d 107, 118 (D.D.C. 2008) (no basis under D.C. law for claim that airline had fiduciary duty to pilot); *see also Tripp v. United States*, 257 F. Supp. 2d 37, 46 (D.D.C. 2003) (rejecting employee's claim for breach of the "duty to preserve the confidentiality of fiduciary relationships" because it was inapplicable in the employer-employee relationship); *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 627 (D.C. 1997) (no implied duty of employers to treat employees in good faith and fair dealing); *United States ex rel. Guo v. Nat'l Endowment for Democracy*, No. 1:18-cv-02986, 2022 WL 503765, at *15 (D.D.C. Feb. 18, 2022) (same).[8] While an employee (as an agent of the employer) may owe a fiduciary

_____

where plaintiffs "have not identified a single authority anywhere in the country suggesting that nonprofit trade associations, as opposed to their officers or directors, owe fiduciary duties to their members."). Plaintiff states in her Complaint that "[w]here the officers or directors of an organization act entirely within the scope of their employment and not in any personal or individual capacity, it is the organization itself which owes a fiduciary duty to the plaintiff/employee." Compl. ¶ 103 (citing *Paul v. Judicial Watch, Inc.,* 543 F. Supp. 2d 1, 6 (D.D.C. Feb. 6, 2008)). However, *Judicial Watch* does not stand for this proposition. The court in that case dismissed claims for breach of fiduciary duty brought against an individual officer; it did not hold that the employer organization owed a duty to the plaintiff. *Judicial Watch*, 543 F. Supp. 2d at 6. Plaintiff's breach of fiduciary duty claims brought against SIPC itself should be dismissed. To the extent her claims are interpreted as being brought against the individual Defendants, they also fail for the other reasons stated herein.

[8] Courts outside of D.C. also regularly affirm that employers do not ordinarily owe a fiduciary duty to their employees outside of some other, special relationship that would give rise to such a duty. *See, e.g.*, *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639–40 (5th Cir. 2007) (plaintiff "points to no case that supports his notion that the mere existence of an employer/employee relationship creates a fiduciary duty under the circumstances presented in this appeal."); *In re El San Juan Hotel Corp.*, 149 B.R. 263, 273 (D.P.R. 1992), *aff'd*, 7 F.3d 218 (1st Cir. 1993) ("Since we have determined that plaintiff here is suing not in his capacity as a creditor, but based on his status as an employee, Otero–Bigles owes him no fiduciary duty."); *Reid v. Temple Univ. Hosp. Episcopal Campus*, No. 17-2197, 2017 WL 5157620, at *5 (E.D. Pa. Nov. 7, 2017) ("Here, Reid was engaged in a typical employer-employee relationship. An employer generally does not owe fiduciary duties to its employees. . . . Reid has not alleged the existence of any other circumstances that would give rise to a fiduciary relationship.") (internal citation omitted); *Hendrix v. CIOX*

duty to her employer (the principal), a reverse duty from principal to agent only exists in very limited situations that, as evident on the face of the Complaint, are not applicable here. *See* Restatement (Third) Of Agency § 8.14 (2006) (principal has limited duty to indemnify agent); *id.* § 8.15 (principal has duty to provide agent with information about risks of physical harm or pecuniary loss); *Multicom Inc. v. Chesapeake & Potomac Tel. Co.*, No. CIV.A. 88-1886-OG, 1988 WL 118411, at *4 (D.D.C. Oct. 27, 1988) ("Although it is well established that an agent owes a fiduciary duty to his principal, no corresponding fiduciary duty is owed by a principal to his agent."); *see also C & E Servs., Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262, 268–69 (D.D.C. 2009) (predicting that D.C. Court of Appeals would follow other jurisdictions concluding the same). Moreover, a fiduciary duty cannot be imposed unilaterally by a party who alleges they placed "trust and confidence" in another. *Sony Music Ent., Inc. v. Robison*, No. 01 CIV. 6415, 2002 WL 272406, at *3 (S.D.N.Y. Feb. 26, 2002) (plaintiffs' assertions that they placed "trust and confidence" in defendant during relationship were not sufficient to create fiduciary duties); *see also United States v. Chestman*, 947 F.2d 551, 567 (2d Cir. 1991) ("[A] fiduciary duty cannot be imposed unilaterally by entrusting a person with confidential information."). Instead, a party must actively assume or accept a fiduciary duty or otherwise affirmatively extend the relationship beyond a contractual one. *See Overseas Priv. Inv. Corp. v. Industria de Pesco, N.A., Inc.*, 920 F. Supp. 207, 210 (D.D.C. 1996) (dismissing fiduciary duty claim where party claiming fiduciary relationship failed to allege basis for finding such relationship and nothing in the parties'

---

*Health*, No. 1:18-cv-1224, 2019 WL 13273185, at *4 (N.D. Ga. Jan. 30, 2019) ("Generally, an employer-employee relationship does not involve any special trust or other circumstances giving rise to fiduciary duties, and Plaintiff continues to allege no facts to suggest otherwise here."); *Briese v. Amerigas, Inc.*, No. CV 08-63-BU-RFC-JCL, 2009 WL 10677368, at *9 (D. Mont. Sept. 1, 2009) (collecting cases "holding that, outside of the ERISA context, employers generally do not owe a fiduciary duty to their employees."), *report and recommendation adopted*, No. CV 08-63-BU-RFC-JCL, 2009 WL 10677434 (D. Mont. Oct. 26, 2009).

agreement "support[ed] the argument that OPIC assumed any special relationship of trust or confidence in this particular case."); *see also MobilizeGreen, Inc. v. Cmty. Found. for the Cap. Region*, 267 A.3d 1019, 1027–28 (D.C. 2022) (affirming summary judgment for defendant where no evidence suggested they had "accepted any new fiduciary obligations" at the end of contractual term); *Himmelstein v. Comcast of the Dist., L.L.C.*, 908 F. Supp. 2d 49, 60 (D.D.C. 2012) ("The requisite 'special relationship' requires more than parties' transacting at arms' length and is one 'in which one party has gained the trust and confidence of the other, enabling the first party to exercise extraordinary influence over the other.'") (internal citation omitted).

Here, Plaintiff does not allege that SIPC violated one of the limited duties an employer owes an employee, nor does she allege that some other special relationship beyond employment existed to impose fiduciary duties on Defendants. *See High v. McLean Fin. Corp.*, 659 F. Supp. 1561, 1568 (D.D.C. 1987) (to find a fiduciary relationship, D.C. courts look for a "'special confidential relationship' that transcends an ordinary business transaction and requires each party to act with the interests of the other in mind.") (internal citation omitted). Plaintiff cites to *Church of Scientology, Int'l v. Eli Lilly & Co.* to suggest that a fiduciary relationship exists where one "trusts in, and relies upon, another." Compl. ¶ 101 (citing 848 F. Supp. 1018, 1028 (D.D.C. 1994)); *see also id.* ¶¶ 102, 117, 135, 161, 176 (same). However, that case is simply inapplicable to the employee/employer relationship at issue here.[9] Plaintiff alleges that she unilaterally "placed" her "trust and confidence" in each of the individual Defendants when she approached them raising concerns about the Portal Project. Compl. ¶ 130; *see also id.* ¶¶ 106, 111, 157, 171-72. This is not

---

[9] *Church of Scientology* involved a contractual relationship between a public relations firm and its client, and "whether the parties, through the past history of the relationship and their conduct, had extended the relationship beyond the limits of the contractual obligations" to create a fiduciary duty. *Church of Scientology*, 848 F. Supp. at 1028.

enough to create a fiduciary relationship. Plaintiff fails to (and cannot plausibly) allege that Defendants accepted this one-sided extension of trust and confidence in a way that would create the "special relationship" required under D.C. law to maintain a claim for breach of fiduciary duty. For all of these reasons, Plaintiff's claims under Counts I-IV should be dismissed. *See Industria de Pesco*, 920 F. Supp. at 210 (granting motion to dismiss).

>    **2.    Plaintiff lacks standing to bring claims for breach of duties owed to the Corporation or its members**

Throughout Counts I-IV, Plaintiff cites to the D.C. Nonprofit Corporation Act to support her claims that SIPC breached its fiduciary duties. Compl. ¶¶ 105, 114, 121, 123, 133, 139, 159, 165, 174. The D.C. Nonprofit Corporation Act provides for duties owed by directors and officers of a nonprofit corporation to act in the best interests of the corporation. D.C. Code §§ 29–406.30, 29–406.42. These are duties the directors and officers owe *to the corporation*, not to an employee. To the extent Plaintiff attempts to bring a claim for breach of fiduciary duty based on these statutory duties, she lacks standing to do so. *See id.* § 29–411.02 (providing standing to bring a civil action in the right of a nonprofit corporation only to certain members or directors).[10] Plaintiff

---

[10] It is worth noting that even if Plaintiff could bring a derivative proceeding as contemplated by the D.C. Code, her claims related to SIPC's directors would still be subject to dismissal because her Complaint fails to overcome the business judgment rule. *See Behradrezaee v. Dashtara*, 910 A.2d 349, 361 (D.C. 2006) (adopting the business judgment rule; "The burden is on the party challenging the decision to establish facts rebutting the presumption."). Allegations sufficient to overcome the business judgment rule require a showing of bad faith: for example, personal financial interest in a challenged transaction, obtaining personal financial benefits to the detriment of the corporation, acting out of self-interest, lack of independence relative to a decision, acting in a manner that cannot be attributed to a rational business purpose, or reaching a decision by a grossly negligent process. *Id.* (finding allegations sufficient to overcome business judgment rule); *Millennium Square Residential Ass'n v. 2200 M St. LLC*, 952 F. Supp. 2d 234, 249 (D.D.C. 2013) (same). Here, Plaintiff's Complaint lacks any allegations sufficient to show that any SIPC director acted in bad faith; instead, she merely alleges Defendant Slacik (the only director named) "fail[ed] to meet [Plaintiff's] expectations" in response to Plaintiff's concerns about the Portal. Compl. ¶¶ 117-18. These are not allegations of bad faith, but rather merely failing to act in the manner Plaintiff would have liked Defendant Slacik to act.

is not a SIPC member; she is a former employee. Compl. ¶ 14. Her attempts to create a fiduciary

duty here where one is clearly not contemplated by the law must fail. Indeed, even if she were a

broker-dealer member of SIPC, which she is not, Plaintiff would not have standing to bring claims

for SIPC's breach of alleged duties owed directly to her. *See, e.g.*, *Krukas v. AARP, Inc.*, 458 F.

Supp. 3d 1, 9 (D.D.C. 2020) (dismissing claim for breach of fiduciary duty against nonprofit

corporation by members "whose suit could not be construed as seeking to protect, derivatively,

[the corporation's] interests.").

### C.   Plaintiff Cannot State a Claim for Negligent Infliction of Emotional Distress Against Any of the Defendants (Counts VI, IX, XI, XIII, XV)

Plaintiff's negligent infliction of emotion distress ("NIED") claims should be dismissed

for two independent reasons: first, because they are barred by the D.C. Workers' Compensation

Act, and second, because she has not pled facts sufficient to meet the standard for such claims

under D.C. law.

#### 1.   Plaintiff's NIED claims are barred by the WCA

"[T]he law in this jurisdiction is clear that the WCA is the exclusive remedy for work-

related injuries, with the result that common law tort claims arising from such injuries, such as

claims for negligence, negligent or intentional infliction of emotional distress, and assault, are

barred in civil actions." *Lockhart v. Coastal Int'l Sec., Inc.*, 905 F. Supp. 2d 105, 117 (D.D.C.

2012). Thus, claims for negligent infliction of emotional distress, where the alleged emotional

distress injuries arise out of employment, are barred by the WCA and should be dismissed. *Id.*;

*Harbour v. Univ. Club of Washington*, 610 F. Supp. 3d 123, 132 (D.D.C. 2022) (granting motion

to dismiss NIED claim barred by WCA); *Bilal-Edwards v. United Plan. Org.*, 896 F. Supp. 2d 88,

96 (D.D.C. 2012) (same); *Doe v. United States*, 797 F. Supp. 2d 78, 84 (D.D.C. 2011) (same).

"[A]n injury arises out of employment so long as it would not have happened but for the fact that

conditions and obligations of employment placed claimant in the position where she was injured." *Harbour*, 610 F. Supp. 3d at 132 (internal citation omitted).

Here, Plaintiff alleges she suffered emotional distress when Defendants failed to assist her "in addressing her ethical concerns with the Portal." *See* Compl. ¶¶ 197, 245, 269, 293, 317. These alleged injuries "ar[ose] out of and in the course of [her] employment" with SIPC; thus, the WCA is Plaintiff's exclusive remedy for these injuries. *Bilal-Edwards*, 896 F. Supp. 2d at 96 (citing D.C. Code § 32–1504(b)). As a result, Plaintiff's NIED claims are barred by the WCA and should be dismissed.

### 2. Plaintiff has not pled facts sufficient to state a claim for NIED under D.C. law

Even if the WCA did not bar Plaintiff's NIED claims, which it does, Plaintiff's NIED claims still should be dismissed. Under D.C. law, "a plaintiff may make out a claim for negligent infliction of emotional distress in one of two ways." *Clark v. District of Columbia*, 241 F. Supp. 3d 24, 30 (D.D.C. 2017). The first is by showing "'(1) the plaintiff was in the zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff feared for his own safety, and (4) the emotional distress so caused was serious and verifiable.'" *Id.* (citing *Harris v. United States VA*, 776 F.3d 907, 915 (D.C. Cir. 2015)). "In the alternative, a plaintiff may show that '(1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff.'" *Id.* (citing *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810-11 (D.C. 2011) (en banc)). Here, Plaintiff does not allege that

she was ever in the zone of any physical danger, so she must establish her claim under the latter standard. This she cannot do.

First, Plaintiff fails to plead facts sufficient to show that Defendants had a relationship with or obligation to Plaintiff that "necessarily implicates [her] emotional well-being." The case law establishes that these types of relationships may include psychiatrist-patient relationships, guardians for vulnerable children or elderly or disabled people, or other doctor-patient relationships that involve care for mental and emotional distress. *Hedgepeth*, 22 A.3d at 813. "Most relationships cannot form the basis of a negligent infliction of emotional distress claim 'because…the purpose of the relationship…is [not] to care for the plaintiff's emotional well-being; rather the object of the engagement is to obtain a financial, commercial, or legal objective.'" *White v. Washington Intern Student Hous.*, No. CV 18-2021 (CKK), 2019 WL 1858298, at *9 (D.D.C. Apr. 25, 2019) (citing *Hedgepeth*, 22 A.3d at 815).

Here, Plaintiff alleges no such special relationship with Defendants implicating her emotional well-being. Indeed, the only relationship she alleges with Defendants is that of a typical employer-employee, and it is well established that "[m]erely alleging an employer-employee relationship forecloses any 'special relationship' liability" for an NIED claim. *Robinson v. Howard Univ., Inc.*, 335 F. Supp. 3d 13, 31 (D.D.C. 2018) (cleaned up), *aff'd sub nom. Robinson v. Wutoh*, 788 F. App'x 738 (D.C. Cir. 2019); *see also Abdelhady v. George Washington Univ.*, No. 1:22-CV-01334 (TNM), 2022 WL 17364618, at *6 (D.D.C. Dec. 1, 2022) (dismissing NIED claim where complaint "describes…merely an employment relationship."); *White*, 2019 WL 1858298, at *9-10 (dismissing NIED claim where plaintiff "has alleged only a traditional employer-employee relationship, the purpose of which is financial and commercial in nature."); *Islar v.*

*Whole Foods Mkt. Grp., Inc.*, 217 F. Supp. 3d 261, 268 (D.D.C. 2016) (dismissing NIED claim where plaintiff merely alleged an "arm's length, supervisor-employee relationship").

Even assuming arguendo that Plaintiff pled a sufficient "special relationship" with SIPC, Plaintiff's NIED claim still fails to adequately plead the second required element: that any alleged negligence by Defendants carried "an especially likely risk" of causing "serious emotional distress" to Plaintiff. *Clark*, 241 F. Supp. 3d at 30. This is a "limiting principle" for NIED claims, requiring it to be "especially likely" that there would be a "deeply emotional response" to the breach under an objective "reasonable person" standard. *Hedgepeth*, 22 A.3d at 813, 815-16. Here, there is no reason to think that it is "especially likely" a reasonable person would suffer serious emotional distress as a result of Defendants' supposedly negligent failure to "address[] [Plaintiff's] ethical concerns with the Portal." Compl. ¶¶ 197, 245, 269, 293, 317. As Plaintiff admits, the Portal that allegedly caused such serious stress was "still under development" when she resigned (and even when she filed her Complaint) and was "not expected to go live until the end of 2023." *Id*. ¶ 4. An objectively reasonable person would not be "especially likely" to suffer serious emotional distress over disagreements with an employer about an IT system that was still under development and not yet in use. Even accepting as true Plaintiff's allegations that she subjectively suffered such distress, this is not enough to sustain her claims. *See Hedgepeth*, 22 A.3d at 815-16 (describing objective reasonable person standard for serious emotional distress); *Abdelhady*, 2022 WL 17364618, at *6 (dismissing NIED claim where plaintiff's allegations provided no "reason to think that it is 'especially likely that serious emotional distress will result from' negligence in the administration of her workers' compensation claim.") (citing *Hedgepeth*, 22 A.3d at 813). Dismissal of Plaintiff's NIED claims is appropriate here for all of these reasons.

**D.      Plaintiff Cannot State A Claim For Negligent Supervision (Count VII)**

As with Plaintiff's NIED claims, Plaintiff seeks to recover for physical and emotional injuries arising out of SIPC's alleged failure to supervise the actions of the individual Defendants regarding the Portal Project. Compl. ¶¶ 208-209, 217. And, as with Plaintiff's NIED claims, the WCA is Plaintiff's "exclusive remedy" for such injuries "arising out of and in the course of [her] employment." D.C. Code § 32-1504(b); *Lockhart*, 905 F. Supp. 2d at 116–17 ("employers are immune from tort actions by their employees for personal injuries arising out of and in the course of their employment."). Plaintiff seeks to impose liability for injuries that "would not have happened but for" her employment with SIPC. *See Harbour*, 610 F. Supp. 3d at 132. In *Harbour*, the plaintiff brought a negligent supervision claim seeking recovery for an alleged failure to monitor and correct the decisions of two managers. *Id.* This Court dismissed the claim as barred by the WCA. *Id.* at 133. The same result should issue here. *See also Lockhart*, 905 F. Supp. 2d at 117 (granting motion to dismiss negligent supervision claim covered by WCA's exclusive remedy where it was undisputed that allegedly injurious events occurred while plaintiff was at work); *Ramey v. Potomac Elec. Power Co.*, 468 F. Supp. 2d 51, 55 (D.D.C. 2006) (dismissing common law claims, including negligent supervision, for alleged injuries resulting from hostile work environment as preempted by WCA).

Even if Plaintiff's alleged injuries were not covered by the WCA's exclusive remedy, which they are, her claim for negligent supervision would nevertheless fail as a matter of law. To establish a claim of negligent supervision, Plaintiff must establish that "(1) the employee behaved in a dangerous or otherwise incompetent manner, (2) the employer knew or should have known its employee's dangerous or incompetent behavior and (3) the employer, 'armed with that actual or constructive knowledge, failed to adequately supervise[] the employee.'" *Busby v. Cap. One, N.A.*, 772 F. Supp. 2d 268, 284 (D.D.C. 2011) (citing *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752,

760 (D.C. 2001)). "[A] common law claim of negligent supervision may be predicated only on common law causes of action or duties otherwise imposed by the common law." *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 576 (D.C. 2007). "To hold otherwise 'would be to impose liability on employers for failing to prevent a harm that is not a cognizable injury under the common law.'" *Id.* (citation omitted). In other words, Plaintiff must allege sufficient facts to plausibly show that she was the victim of common law tortious conduct by SIPC's employee(s). *Id.* at 577; *see also Islar*, 217 F. Supp. 3d at 266-67. As explained above (with respect to her NIED claims) and below (with respect to her catchall "common law negligence" claims), Plaintiff has not pled any plausible claim of tortious conduct by the individual Defendants, *see supra* Section IV(C)(2) and *infra* Section IV(E)(1), and thus she cannot maintain a claim for negligent supervision against SIPC. Plaintiff's claim should thus be dismissed. *See Islar*, 217 F. Supp. 3d at 266-67 (dismissing negligent supervision claim for failure to allege sufficiently breach of a predicate common law duty).

> **E.**     **Plaintiff's Complaint Does Not State A Catchall Claim For "Common Law Negligence" Against Any Of The Defendants (Counts V, VIII, X, XII, XIV)**

In addition to her fatally flawed claims for negligent infliction of emotional distress and negligent supervision, Plaintiff attempts to bring catchall common law negligence claims against SIPC and each of the individual Defendants. These too fail as a matter of law. To make out a claim for negligence, Plaintiff must plead sufficient facts to establish, "(1) a duty recognized by law, requiring [SIPC] to conform to a standard of conduct; (2) a breach of that duty; (3) proximate cause; and (4) actual loss or damages." *Stevens v. Sodexo, Inc.*, 846 F. Supp. 2d 119, 127 (D.D.C. 2012). Plaintiff's remaining negligence claims should be dismissed because (1) she fails to plead any recognized duty that was breached by Defendants, and (2) they are barred by the economic loss doctrine.

### 1.    Plaintiff fails to plead any recognized duty that was breached by Defendants

Plaintiff alleges that Defendants had the following duties: (i) "to avoid harm," Compl. ¶ 181 (Count V against SIPC); (ii) "to take appropriate action in response to her concerns about the Portal project, and to ensure that SIPC would not require [Plaintiff] to violate her professional codes of ethics," *id*. ¶ 224 (Count VIII against Defendant Slacik); and (iii) "to refrain from requiring [Plaintiff] to work in a manner that would cause [or require] her to violate her professional code of ethics," *id*. ¶¶ 255 (Count X against Defendant Wang), 279 (Count XII against Defendant Glover), 303 (Count XIV against Defendant Saperstein). None of these are duties recognized by the common law.

Where an employee fails to plead facts establishing his employer has breached a recognized duty owed to its employees, his negligence claim should be dismissed. *Stevens*, 846 F. Supp. 2d at 127-28. In *Stevens*, for example, an employee alleged his employer committed common law negligence by "failing to put in place certain identity theft safeguards." *Id.* at 127. This Court dismissed his claim because the employee "fail[ed] to identify any basis in the District of Columbia's common law, or elsewhere, for such duties." *Id.*

Moreover, even if Plaintiff could point to some basis under D.C. law for recognizing such duties that this Court could find sufficient, she fails to plausibly allege that Defendants breached these duties. At bottom, Plaintiff asserts that Defendants breached a duty to not require Plaintiff to violate her ethical obligations by using the Portal in her job. But as Plaintiff's own Complaint acknowledges, the Portal was not complete or in use at the time Plaintiff resigned (or even at the time she filed her Complaint). Compl. ¶ 4. Plaintiff cannot plausibly allege both that the Portal was not in use and that she was somehow required to use it. *See Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 710 (D.C. 2013) (affirming dismissal of claim where

"alleged outcome is predicated upon mere speculation" which was "insufficient as a matter of law"); *Li*, 2023 WL 2784872, at *2 (Cobb, J.) (on a motion to dismiss, "a court need not accept 'inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.'"). Like her negligent supervision and NEID claims, Plaintiff's "common law" negligence claims should be dismissed.

### 2.      Plaintiff's claims are barred by the economic loss doctrine

"Generally, under the 'economic loss' rule, a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort." *Aguilar v. RP MRP Washington Harbour, LLC*, 98 A.3d 979, 982-83 (D.C. 2014) (adopting the economic loss doctrine and affirming dismissal of negligence claim). The only exception to this rule is where a "special relationship" exists that "provide[s] an independent duty of care." *Id.* at 984.

Here, Plaintiff's only alleged injury under each negligence claim is purely economic: lost wages and benefits, for which she seeks back pay, front pay, reimbursement, and interest. Compl. ¶¶ 186, 230, 259, 283 & p. 88-89 (prayer for relief). Plaintiff has also failed to plead any "special relationship" between herself and the Defendants that would create an "independent duty of care" for Plaintiff's economic well-being. *See Aguilar*, 98 A.3d at 985 (plaintiffs failed to demonstrate a "special relationship" where there was "no obligation on the part of [the defendants] to care for [the employees'] economic well-being."). Thus, each of her negligence claims is also barred by the economic loss doctrine and should be dismissed. *See Faktor v. United States*, No. 1:20-CV-263 (CKK), 2021 WL 848686, at *5 (D.D.C. Mar. 4, 2021) (granting motion to dismiss where plaintiff's claim relied "merely on the conclusory assertion that 'there is a "special relationship" between Plaintiff and Defendant'" but she failed to provide any reasoning, facts, or legal authority to support such a relationship).

**F.**     **Plaintiff's Constructive Discharge Claim (Count XVI) Must Be Dismissed**

"[C]onstructive discharge is not a cause of action in its own right." *Dickens v. Dep't of Consumer & Regul. Affs.*, 298 F. App'x 2, 3 (D.C. Cir. 2008). Rather, "'[c]onstructive discharge doctrines simply extend liability to employers who indirectly effect a discharge that would have been forbidden by statute if done directly.'" *Id.* at 3 (citing *Simpson v. Fed. Mine Safety & Health Review Comm'n*, 842 F.2d 453, 461 (D.C. Cir. 1988)). For example, a plaintiff alleging discrimination under the D.C. Human Rights Act might allege that while she was not terminated by her employer, the intolerable conditions to which she was subjected forced her to resign.[11] *See, e.g.*, *Cole v. Powell*, 605 F. Supp. 2d 20, 25 (D.D.C. 2009) (constructive discharge claim requires showing of intentional discrimination in violation of a statute *and* intolerable working conditions plus aggravating factors). In *Simpson*, as another example, the court analyzed a constructive discharge claim where the parties agreed that a constructive discharge "would have amounted to unlawful discrimination within meaning of" the Federal Mine Safety & Health Act. *Simpson*, 842 F.2d at 461. Here, Plaintiff does not allege that the purported constructive discharge violated or would have amounted to a violation of any statute. Her constructive discharge claim cannot stand on its own and thus should be dismissed.[12]

---

[11] This was precisely the fact pattern in a case cited by Plaintiff in her Complaint in support of her constructive discharge claim, where the plaintiff alleged she was constructively discharged in violation of DCHRA. *See* Compl. ¶ 325 (citing *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 362 (D.C. 1993)).

[12] Plaintiff also cites to *Darrow v. Dillingham & Murphy, LLP*, 902 A.2d 135, 138 (D.C. 2006), as support for her constructive discharge claim, *see* Compl. ¶¶ 323-25, but that case is also inapposite. There, the plaintiff brought a claim for "retaliatory constructive termination," which the court construed as a claim for wrongful discharge (and thus an exception to the at-will employment doctrine). *Id.* at 137-38. The *Darrow* plaintiff alleged she was constructively discharged in retaliation for refusing to participate in illegal billing activity. *Id.* Here, Plaintiff does not allege that she was wrongfully terminated or wrongfully discharged (or that she can bring such a claim pursuant to any exception to the at-will employment doctrine), nor does she or can she allege that the supposed constructive discharge was retaliatory. *See* Compl. ¶¶ 322-44.

Even if Plaintiff pled a legally sufficient cause for constructive discharge under an employment (or any other) statute, which she does not, her claim would still fail. To establish that a voluntary resignation amounts to a constructive discharge, Plaintiff must allege plausible facts that demonstrate that SIPC deliberately made her working conditions objectively intolerable, which caused her to resign. *Hargrove v. AARP*, 205 F. Supp. 3d 96, 119 (D.D.C. 2016); *Robinson v. Ergo Sols., LLC*, 85 F. Supp. 3d 275, 284 (D.D.C. 2015). "Constructive discharge does not, however, 'occur when an employee leaves an unpleasant but objectively tolerable job because alternatives have become more attractive, even if the employer's misbehavior creates the unpleasantness.'" *Robinson*, 85 F. Supp. 3d at 283 (internal citation omitted).

Plaintiff has not pled facts sufficient to establish either intolerability or deliberateness. While Plaintiff makes conclusory claims that her working conditions were intolerable, the conditions she describes tell another story. Plaintiff alleges that SIPC created intolerable working conditions by "refusing to take any action to remedy" the problems she raised with the Portal Project and thus "creat[ing] a prohibited ethical conflict under the AICPA and CFA Code [sic]." Compl. ¶¶ 327-28, 330. But even Plaintiff admits that the Portal ***was still being developed*** at the time she resigned. *Id.* ¶ 4. In other words, even accepting Plaintiff's allegations as true, SIPC was still able to remedy any supposed issues with the Portal before putting it to use (and before Plaintiff could have or would have used the Portal to perform her job duties). That these conditions were neither deliberate nor intolerable is further underscored by the fact that Plaintiff was given the opportunity to express a preference to be taken off the Portal Project; instead of doing so, she resigned. *Id.* ¶¶ 75, 98.

Plaintiff's allegations boil down to a business disagreement over how to build the Portal and manage the Portal Project, which was still ongoing when Plaintiff resigned. This is not a case

of deliberately created or objectively intolerable working conditions by any stretch of the imagination. *See Robinson*, 85 F. Supp. 3d at 283 (dismissing constructive discharge claim; "'The kinds of situations where courts have upheld constructive-discharge findings tend to involve extreme mistreatment or thinly veiled (or even overt) threats of termination.'"); *Cole*, 605 F. Supp. 2d at 25 (dismissing constructive discharge claim where allegations of failures in employer's EEO investigation procedure were insufficient as a matter of law); *see also Arthur Young & Co.*, 631 A.2d at 362 (describing intolerable conditions sufficient to support a constructive discharge claim). It strains the bounds of credulity to allege that the Portal was not being used, but that Defendants somehow forced Plaintiff to choose between using the Portal and resigning. Like the rest of her claims, Plaintiff's Complaint fails to plausibly state a claim for constructive discharge, and thus should be dismissed.

## V.   **CONCLUSION**

For the reasons stated herein, Defendants respectfully request that the Court grant its motion to dismiss Plaintiff's Complaint in its entirety, with prejudice.

Dated: December 18, 2023                   Respectfully submitted,

/s/ Carson H. Sullivan
Carson H. Sullivan (D.C. Bar No. 488139)
carsonsullivan@paulhastings.com
Madalyn K. Doucet (D.C. Bar No. 1600121)
madalyndoucet@paulhastings.com
PAUL HASTINGS LLP
2050 M Street, N.W.
Washington, DC  20036
Telephone:       1(202) 551-1700
Facsimile:        1(202) 551-1705

*Counsel for Defendants*