IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| ELIZABETH O. FELLEMAN,<br><br>*Plaintiff*,<br><br>v.<br><br>**SECURITIES INVESTOR PROTECTION CORPORATION ("SIPC")**, *et al.*,<br><br>*Defendants*. | Civil Action No.: 1:23-cv-02994-JMC |

**PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF HER OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff Elizabeth O. Felleman ("Felleman" or "Plaintiff"), by and through undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, submits this Statement of Points and Authorities in Support of her Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, and states the following:

i

# TABLE OF CONTENTS

I. STANDARD OF REVIEW ................................................................................................ 1

I. Legal Analysis ................................................................................................................... 1

A. Defendants Fail to Qualify Under Either Standard of Immunity Claimed .......................... 1

   1. The Security Investor Protection Act Does Not Immunize the Defendants' Conduct Because It Was Not Done in Good Faith. ................................................................................ 1

   2. The Public Benefit Created by Defendants Actions – if any – is Outweighed by the Harm Plaintiff Suffered. ..................................................................................................................... 5

B. SIPC Owed a Fiduciary Duty to Plaintiff ............................................................................ 7

   1. SIPC, Through its Directors and Officers, Created a Fiduciary Duty Relationship with Plaintiff. .................................................................................................................................... 7

   2. Plaintiff Has Not Alleged She Has Standing to Bring Claims by the Corporation or its Members. ................................................................................................................................ 10

C. Plaintiff's Negligent Infliction of Emotional Distress Claims are Sufficiently Pled Against the Individual Named Defendants. ......................................................................................... 10

D. Plaintiff's Common Law Negligence Claims Are Sufficiently Pled Against the Individual Named Defendants. ................................................................................................................. 12

E. Concessions ........................................................................................................................ 13

Conclusion .................................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Cochran & Co., Inc.,* 597 A.2d 28 (D.C. Cir. 1991) ............................................. 13, 14

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............................ 1

*Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) ...................................................... 1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ............. 1

*Blumenthal v. Cairo Hotel Corp.*, 256 A.2d 400, 402 (D.C. 1969) ........................................... 12

*Cahn v. Antioch Univ.*, 482 A.2d 120, 131-32 (D.C.1984) ...................................................... 9

*Church of Scientology v. Eli Lilly & Co.*, 848 F. Supp. 1018, 1028 (D.D.C. 1994) ....................... 9

*Council on Am.-Islamic Rels. Action Network, Inc.*, 793 F.Supp.2d 311, 341 (D.D.C. 2001) ... 8, 9

*Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C.Cir.1996) ..................................................... 8

*Forrester v. White*, 484 U.S. 219, 224, 108 S. Ct. 538, 542, 98 L. Ed. 2d 555 (1988) ............... 5, 6

*Gov't of Rwanda v. Rwanda Working Grp.*, 227 F.Supp.2d 45, 64 (D.D.C.2002) ........................ 8

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................................ 4

*Hately v. Watts*, 917 F.3d 770, 782 (4th Cir. 2019) ................................................................ 1

*Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789 (D.C. 2011) ........................................... 11

*High v. McLean Fin. Corp.*, 659 F.Supp. 1561, 1568 (D.D.C. 1987) ..................................... 8, 9

*Himmelstein v. Comcast of the Dist., L.L.C.*, 908 F. Supp. 2d 49 (D.D.C. 2012) ....................... 8

*Houston Cmty. Hosp. v. Blue Cross and Blue Shield of Tex.*, 481 F.3d 265, 271 (5th Cir.2007) .... 5

*Kumar v. George Washington Univ.*, 174 F. Supp. 3d 172, 176 (D.D.C. 2016) ......................... 5

*Lockhart v. Coastal Intern. Sec., Inc.,* 905 F. Supp.2d 105 (D.D.C. 2012) ................................ 13

*Mangold v. Analytic Servs.*, 77 F.3d 1442, 1446 (4th Cir. 1996) .............................................. 5

*Morrison v. NacNamara*, 407 A.2d 555, 560 (D.C. 1979) ..................................................... 12

*Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) ....................... 1

*Norman E. Duquette, Inc. v. Comm'r of I.R.S.*, 110 F. Supp.2d 16, 22-23 (D.D.C. 2000) ......... 2, 3

*Pannu v. Jacobson*, 909 A.2d 178, 194 (D.C. 2006) ...................................................... 12

*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) ....................... 1

*Tolu v. Ayodeji*, 945 A.2d 596, 603 (D.C. 2008) ........................................................... 12

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F.Supp.2d 198, 218 (S.D.N.Y. 2002) ............................................................................................................. 8

*Westfall v. Erwin*, 484 U.S. 292, 296 n. 3 (1988) ........................................................... 6

**Statutes**

D.C. Code § 32-1514(d) ................................................................................................. 13

D.C. Workers' Compensation Act, D.C. Code § 32-1501 *et seq.* ................................. 13

The Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa *et. seq.* ............... 1, 5

I.     STANDARD OF REVIEW

In assessing the sufficiency of a complaint, a Court must "assume as true all its well-pleaded facts and draw all reasonable inferences in favor of the plaintiff." Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 452 (4th Cir. 2017); *see also* Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). If the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" then dismissal is improper. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Pleadings are no longer required to comply with the "hyper technical, code-pleading regime of a prior era." Id. at 678. To survive a motion to dismiss, a complaint must simply contain factual allegations that "raise a right to relief above the speculative level, thereby nudging [the] claims across the line from conceivable to plausible." Hately v. Watts, 917 F.3d 770, 782 (4th Cir. 2019) (quoting Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011)).

I.     **Legal Analysis**

   A.  **Defendants Fail to Qualify Under Either Standard of Immunity Claimed**

Neither of Defendants' immunity arguments are applicable as a matter of law. As such, neither affirmative defense is sufficient to dismiss the claims presented in Plaintiff's Complaint.

   1. The Security Investor Protection Act Does Not Immunize the Defendants' Conduct Because It Was Not Done in Good Faith.

The Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa *et. seq.* ("SIPA") created the SIPC to protect the investing public during the liquidation of one of its members due to bankruptcy or financial hardship. *See Mission*, SIPC, https://www.sipc.org/about-sipc/sipc-mission (January 2, 2024). Importantly, its focus is to return missing customer property, up to

certain limits. Id. SIPA shields the SIPC and its Directors, Officers, and employees "from actions or omissions done in *good faith* under or in connection with and matter contemplated." 15 U.S.C. § 78kkk(c) (Emphasis added).

Defendants attempts to argue that Plaintiff must have used the magic words "not in good faith" to prevail, but then acknowledges that "SIPA's grant of immunity will extend to actions taken by the Defendants within their discretionary authority where a reasonable person could have believed that those actions were lawful." Def's Statement of Points and Authorities, ECF No. 9 at 17 n.2 (citing Norman E. Duquette, Inc. v. Comm'r of I.R.S., 110 F. Supp.2d 16, 22-23 (D.D.C. 2000)). The Plaintiff's allegations sufficiently detail the Defendants' actions or omissions, from which this Court must grant her the benefit of the reasonable inference that the Defendants' actions were not being done in good faith, to-wit: her allegation that SIPC sought to silence her regarding the concerns she was raising about the Portal project, Compl. ¶ 10-11, 60, 63-69, 71; SIPC's ignoring her concern that data would be destroyed by allowing changes to the database, rather than updates, Compl. ¶ 41; that although she was told specific items of her expressed concerns would be investigated or discussed, they were not, Compl. ¶ 44; the acknowledgement from Defendants that the Portal Project was over budget and behind schedule after Plaintiff had voiced concerns regarding the magnitude of the issues identified, Compl. ¶ 48-49; Defendants' restriction of communication between SIPC's non-IT employees and InfernoRed, which precluded Plaintiff and others from the Finance Department from providing information necessary to the Portal's ability to provide accurate figures to its members and to SIPC, Compl. ¶ 50, 52-54; Defendants' admonishments of Plaintiff for continuing to point out errors in the Portal project that she reasonably believed would prevent SIPC from serving its members, Compl. ¶ 55-74; Glover's admission that the work on the Portal Project was "being done wrong," Compl. ¶ 68; Glover's

admission that while he knew what Wang was doing on the Portal was wrong, he refused to voice his concerns about it, because doing so would jeopardize his position within SIPC, Compl. ¶ 68, and; Plaintiff's repeated complains to Wang that the interest being calculated by the Portal was not within SIPA standards, Compl. ¶ 77. Applying the reasonable person standard required by Duquette, Glover's admission to Plaintiff that what SIPC (and in particular, Wang) was doing was "wrong" evinces that he did not believe SIPC's actions (and, by extrapolation, the actions of Wang, Slacik, and Saperstein) were lawful. Accordingly, SIPA's grant of immunity does not extend to immunize the Defendants' actions. *See* Duquette, 110 F. Supp.2d 16, 22-23.

Defendants disingenuously attempt to argue that Plaintiff only mentioned "potential fraud" in her Complaint, Def's Statement of Points and Authorities, ECF No. 9 at 17 n.3, but fail to acknowledge Plaintiff's September 2022 letter to Slacik that specifically cites concerns "regarding the fraud and waste I have observed," Compl. ¶ 60. The concerns which Plaintiff raised to Slacik in this letter include specific instances of *actual* fraud and waste, to-wit: "'Interest charges *do not adhere* to SIPA in some cases.'" Compl. at 17, ¶ 60. (Emphasis added). "'*The newly designed SIPC 6 and SIPC 7 forms, developed by InfernoRed and Membership without the input or approval of Finance . . . do not adhere to the fundamental logic behind the amount due calculation. Descriptions for lines on the form do not match the numbers shown. Actual amounts previously paid are not presented specifically on the forms, making it hard for a broker to decipher how their balance due was arrived at.*'" Id. (Emphasis added). "'Membership has insisted on coming up with an alternate methodology and new forms, and senior management *has ordered Membership's forms* to be used despite having been warned by Finance that the calculation methodology used is incorrect.'" Id. at 17-18 ¶ 60 (Emphasis added). "'The project *has operated without . . . fundamental project management features including timelines, specific milestones, testing plans,*

*and . . . written specifications. There are no cost limitations in the contract and statement of work with InfernoRed. SIPC has paid InfernoRed $3.8 million for the project thus far in 2022.* The earliest that management is projecting completion of the project is December 2022, at which time the total cost of the project would likely be $4.4 million.'" Id. at 18, ¶ 60 (Emphasis added). "'*InfernoRed was brought on without an open selection process*, under a contract that was signed less than a month after IT was awarded the project. *Now, the $3.8 million cost of the project is many times higher than the total cost presented by several of the other software developer proposals considered* and is about the same as a proposal by FINRA which was deemed at the time as prohibitively high.'" Compl. at 18 ¶ 60 (Emphasis added). Glover admitted that the Portal project was a waste of money. Compl. at 23 ¶ 69. Defendants' assertion that Plaintiff "never alleges that SIPC or any Defendant actually committed fraud, waste, abuse, or any other action in bad faith," Def's Statement of Points and Authorities, ECF No. 9 at 17 n3, is clearly without support.

While Defendants list several matters that the SIPA expressly permits SIPC to perform, *see* Def's Statement of Points and Authorities at 15-16, they fail to cite to any provision of the SIPA (or any other statute) that permits SIPC or its Directors, Officers, or employees to knowingly require another SIPC employee to violate a code of professional ethics which must be adhered to in order for that employee to maintain a professional license through the licensing body. After Plaintiff notified each Defendant of her obligation to remove herself from any situation that violates her code of ethics as an accountant and financial analyst, each Defendant minimized the issue and expected Plaintiff to continue in a position where fraud, waste, and abuse were apparent. Even using the reasoning espoused in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), no reasonable person could believe that requiring an employee to go along with a scheme of fraud, waste, and abuse would be a lawful request. Defendants' statutory immunity claim must fail.

## 2. The Public Benefit Created by Defendants Actions – if any – is Outweighed by the Harm Plaintiff Suffered.

Defendants' claim that official immunity extends to their actions is overbroad. Official immunity extends only to government entities or non-governmental entities when "they are performing official or governmental functions." Mangold v. Analytic Servs., 77 F.3d 1442, 1446 (4th Cir. 1996). Although Defendants try to give themselves color of a government agency based on how its Board members are appointed, the SIPC "is not an agency or establishment of the United States Government." *Mission*, SIPC, https://www.sipc.org/about-sipc/sipc-mission (January 2, 2024); *see also* 15 U.S.C. 78ccc(a)(1)(A) (SIPC shall not be an agency or establishment of the United States Government). Courts have extended immunity to non-governmental entities when they are performing "official" or "governmental" functions. Kumar v. George Washington Univ., 174 F. Supp. 3d 172, 176 (D.D.C. 2016) (citing Mangold v. Analytic Servs., 77 F.3d 1442, 1446–48 (4th Cir.1996)).

However, "[n]ot every activity in which government might decide to engage is a function of government in private hands." Id. (citing Houston Cmty. Hosp. v. Blue Cross and Blue Shield of Tex., 481 F.3d 265, 271 (5th Cir.2007)). This court has held that labeling activity sufficient to warrant the exception is imprecise, but the activity must be "critical to the efficient conduct of government" and "aligns with traditionally protected . . . functions of government." Id. (citing Manigold, 77 f.3d at 1447; Houston Cmty. Hosp., 481 F.3d at 276). The Supreme Court has "generally been quite sparing in its recognition of claims to absolute official immunity." Forrester v. White, 484 U.S. 219, 224, 108 S. Ct. 538, 542, 98 L. Ed. 2d 555 (1988). The Supreme Court has created a "functional" approach to granting this kind of immunity, examining "the nature of the functions . . . entrusted, and . . . evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." Id.; Westfall v. Erwin, 484 U.S.

5

292, 296 n. 3 (1988) (holding that "immunity attaches to particular official functions, not to particular offices). Contrary to Defendants' assertion that official immunity is an "absolute bar to liability, even in the face of allegations of improper motive, bad faith, and fraud," Def's Statement of Points and Authorities, ECF No. 9 at 19 n.5. Defendants instead "have the burden of showing that such an exemption is justified by overriding considerations of public policy." Forrester, 484 U.S. at 224. In fact, the Supreme Court has admonished courts "to consider whether the contribution to effective government in particular contexts outweigh the potential harm to individual citizens." Westfall, 484 U.S. at 299–300. This is especially true when Congress has provided no guidance on when immunity is warranted in a particular context.[1]

In this case, Defendants have made no showing as to how the public interest outweighs the potential harm to individual citizens. Arguably, the public interest is quite low. It strains credulity that the public interest in effective government would be furthered by the fraud, waste, and abuse Plaintiff warned of and then saw come to pass, including the Portal Project being years behind schedule, no cap in costs, and the lack of a bidding process for the contract. Neither would the public interest be jeopardized by allowing Defendants to stand trial; all the official duties and matters committed to Defendants' control or supervision could still be effectively exercised because Defendants' actions in permitting fraud waste and abuse fall outside of the outer perimeter of those official duties.

As the public interest in immunizing Defendants' conduct is low – and likely would be furthered by preventing immunization – Plaintiff's harm outweighs the public interest. Plaintiff has alleged physical and emotional injury, including tremors in her hands, anxiety about using the

---

[1] Congress passed the Federal Employees Liability Reform and Tort Compensation Act to address these concerns with governmental persons or entities. The Westfall test remains the test for nongovernmental persons or entities. See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 72 (2d Cir. 1998).

6

Portal to do her duties, and anxiety that continued use of the Portal would cause her to violate her professional ethical obligations. Defendants were aware of these injuries yet did nothing to relieve them. In fact, Defendants exacerbated Plaintiff's injuries when they intimidated her into remaining quiet, implicitly threatening her job with SIPC if she did not remain quiet. Glover told Plaintiff, "'we just don't want to hold up the project by going over the same thing again and again and again. When they are not being receptive. You can't force them to be receptive. No matter what you do.'" Compl. at 22 ¶ 64. He continued by telling her that "'if I had challenged something like that, they would not have allowed me to assume this position. If Joe had done that, he would not have assumed his position . . . .[T]his stuff with the portal being wrong, I know it's being done wrong, it's not going to be something I'm going to argue with Josephine [Wang] about . . . .'" Id. at 23 ¶ 68.

As Defendants have not established that the public interest in effective government outweighs the potential harm to any individual citizens, and it is clear Defendants' conduct caused injury to Plaintiff, and possibly the public itself, Defendants' claims of official immunity should fail.

### B. SIPC Owed a Fiduciary Duty to Plaintiff

1. SIPC, Through its Directors and Officers, Created a Fiduciary Duty Relationship with Plaintiff.

Defendant is correct that Restatement (Third) of Agency §8.15 requires the principial to provide information about risks of physical harm or pecuniary loss. However, Defendant neglects to address other requirements of the restatement, namely the duty to refrain from conduct likely to injure an agent's business reputation or reasonable self-respect. Restatement (Third) Of Agency §

8.15 cmt. d. Defendants claim that Plaintiff's actions were a unilateral placement of trust in confidence but fails to account for Defendants' actions when she made that placement.

While Defendants argue that Himmelstein v. Comcast of the Dist., L.L.C., 908 F. Supp. 2d 49 (D.D.C. 2012) is the appropriate standard to determine a special relationship, that case is inapposite. In Himmelstein, the court sought to determine the confidential relationship required to sustain a constructive fraud charge, *not* one for breach of fiduciary duty. The only mentions of fiduciary duty are in regard to a debtor-creditor relationship. Defendants' citations to Himmelstein, therefore, are not instructive to the case at bar.

"A fiduciary relationship is founded upon trust or confidence reposed by one person in the integrity and fidelity of another." Gov't of Rwanda v. Rwanda Working Grp., 227 F.Supp.2d 45, 64 (D.D.C.2002). Historically, District of Columbia courts have found the question of a fiduciary relationship fact intensive. "The District of Columbia courts have deliberately left the definition of a 'fiduciary relationship' open-ended, allowing the concept to fit a wide array of factual circumstances." Council on Am.-Islamic Rels. Action Network, Inc., 793 F.Supp.2d 311, 341 (D.D.C. 2001) (CAIR II) (citing High v. McLean Fin. Corp., 659 F.Supp. 1561, 1568 (D.D.C. 1987)); *see also* United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F.Supp.2d 198, 218 (S.D.N.Y. 2002) ("[T]he exact limits of what constitutes a fiduciary relationship are impossible of statement.") (quotation marks omitted). "Deciding whether a fiduciary relationship exists in a particular case requires 'a searching inquiry into the nature of the relationship, the promises made, the type of services or advice given and the legitimate expectations of the parties." CAIR II, 793 F.Supp.2d at 341 (quoting Firestone v. Firestone, 76 F.3d 1205, 1211 (D.C.Cir.1996)). In previous opinions, this Court emphasized that "[b]ecause the inquiry is fact-

intensive, it is often inappropriate to decide whether a fiduciary relationship existed even in the context of a motion for summary judgment." Id.

Additionally, this Court has found that the employer-employee relationship can at times support a claim for breach of fiduciary duty. Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz, 793 F. Supp. 2d 311, 341 (D.D.C. 2011) (citing Cahn v. Antioch Univ., 482 A.2d 120, 131-32 (D.C.1984). "Whether Plaintiffs will be able to show that the relationship was grounded in a higher level of trust than is normally present between those involved in arm's-length business transactions is a question that must be answered after discovery." Id. at 342.Plaintiff contends that the type of "special confidential relationship," High v. McLean Fin. Corp. 659 F. Supp. 1561, 1568 (D.D.C 1987), necessary to create a fiduciary duty by SIPC to Plaintiff, is exactly what was formed when the discussions with each named Defendant "extended the relationship beyond the limits of the contractual obligations." Church of Scientology v. Eli Lilly & Co., 848 F. Supp. 1018, 1028 (D.D.C. 1994). Slacik affirmatively extended the relationship when she launched an investigation of Plaintiff's concerns after Plaintiff described the fraud, waste, and abuse, and expressed concerns over her physical and emotional health, as well as her ethical obligations. Plaintiff told Slacik in her September 2022 letter that, "'As a CPA and CFA, I operate under a code of professional ethics. It is my duty to report suspected fraud, and I take this duty seriously.'" Compl. at 35 ¶ 110. However, Slacik did not conduct the investigation in good faith, summarily claiming there was no evidence to substantiate Plaintiff's claims, even though Plaintiff provided such evidence in her September 2022 Letter. Compl. at 25 ¶ 75; 35 ¶113. Wang affirmatively extended that relationship when Plaintiff told her of the issues with the Portal and her ethical obligations, and Wang seemingly took steps to correct, but were only moves to placate Plaintiff and not address the issues at all. Compl. at 41-42 ¶ 126; 43 ¶ 130; 44 ¶¶ 131-132. Glover affirmatively extended that

relationship when he spoke with Plaintiff about her concerns, seemingly to find a resolution. However, after gaining Plaintiff's trust, Glover admonished her for her concerns, would not allow her to be removed from the Portal Project, and condescendingly suggested she not take it personally while telling her not to question Defendants' judgment, even in the face of violating her ethical obligations. Compl. at 48-49 ¶ 146; 49-50 ¶ 147-149. Saperstein affirmatively extended that relationship during the March 24, 2022, conversation whereby Saperstein implored Plaintiff to recount her concerns, seemingly to help alleviate them. However, Saperstein instead relayed the information to Glover, who admonished Plaintiff for saying anything at all. Saperstein told Plaintiff that she needed to "cheer up" when Plaintiff relayed her concerned about violating her ethical obligations or begin forced to resign. Compl. at 55-56 ¶¶ 169-170. In all instances, each of the Defendants extended the relationship between themselves and Plaintiff, essentially creating a situation to earn her trust, to then exercise extraordinary influence over her to silence her concerns. As Plaintiff has sufficiently alleged facts from which all reasonable inferences must be drawn in her favor that a fiduciary relationship existed between her and Defendants, Defendants' Motion to Dismiss Plaintiff's fiduciary duty claims must be denied.

2. Plaintiff Has Not Alleged She Has Standing to Bring Claims by the Corporation or its Members.

Despite Defendants' illusory argument to the contrary, Plaintiff has not attempted to bring a derivative suit on behalf of the SIPC or its members under the D.C. Nonprofit Corporation Act. *See* Def's Statement of Points and Authorities, ECF No. 9, at 24. Nor has she claimed to be a member herself. No argument regarding a derivative suit is remotely responsive to the Complaint.

**C. Plaintiff's Negligent Infliction of Emotional Distress Claims are Sufficiently Pled Against the Individual Named Defendants.**

Plaintiff's claims of negligent infliction of emotional distress (NIED) meet the standard outlined in Hedgepeth v. Whitman Walker Clinic, 22 A.3d 789 (D.C. 2011). As discussed, *supra*, each individually named defendant undertook obligations to Plaintiff beyond the normal employer-employee relationship. While their relationship might have started out to "obtain financial, commercial, or legal" objectives, the relationship developed beyond that when Plaintiff informed each of them of the dire consequences to her career of her continuing to work on the Portal Project. The Defendants' obligation to not force Plaintiff into choosing between her position at SIPC or potentially losing her career for violating ethical obligations necessarily implicated her well-being. It was especially likely that this Hobson's Choice between resigning or violating her ethical obligations would cause serious emotional distress to the reasonable person; requiring anyone to violate their ethical obligations or give up their source of income is especially likely to invoke a "deeply emotional response" as required by Hedgepath. Plaintiff's serious emotional distress, leading to physical symptoms, was caused by the individually named defendants' actions and omissions to act.

Defendants continue to point out that the Portal was still under development when Plaintiff resigned. However, Defendants continue to conflate the Portal's status with Plaintiff's stress regarding her ethical obligations. At no point has Plaintiff alleged that she was harmed by the Portal's "live" status. Rather, Plaintiff's injury arises from the fact that after Defendants undertook a special relationship of trust that permitted them to exercise extraordinary influence over her, they continually insisted that she be involved in a project that would cause her to violate her ethical obligations as an AICPA member, continuing to jeopardize her current and future career. Any argument regarding the Portal's "live" status is simply misdirection.

As Plaintiff has sufficiently pled each element of NIED to meet the standard to survive a motion to dismiss, Defendants' motion should be denied.

### D. Plaintiff's Common Law Negligence Claims Are Sufficiently Pled Against the Individual Named Defendants.

Plaintiff's claims against each individually named Defendant sufficiently outline how each element of common law negligence has been met. Defendants only contest the elements of duty and breach, so causation and damages need not be analyzed. All duties Plaintiff has put in the Complaint fall under the "reasonably prudent person" standard from Tolu v. Ayodeji, 945 A.2d 596, 603 (D.C. 2008) (quoting Morrison v. NacNamara, 407 A.2d 555, 560 (D.C. 1979) ("In negligence actions the standard of care by which the defendant's conduct is measured is often stated as that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances"). "This jurisdiction does not recognize varying standards of care depending upon the relationship of the parties but always requires reasonable care to be exercised under all the circumstances." Pannu v. Jacobson, 909 A.2d 178, 194 (D.C. 2006) (quoting Blumenthal v. Cairo Hotel Corp., 256 A.2d 400, 402 (D.C. 1969)) (internal quotation marks omitted).

In this case, Plaintiff has adequately pled that each individually named defendant owed the same duty as a reasonably prudent person, and that the actions taken by them have failed to meet that standard. Again, the Portal's "live" status is not at issue. Plaintiff was required to assess the data coming out of the Portal before the Portal was opened to SIPC's members. Defendants asked Plaintiff at numerous intervals to violate her ethical obligations simply by continuing to work on the project after Plaintiff had already identified to them that the Portal project was rife with fraud, waste, and abuse. As Plaintiff's Complaint provides these facts, reasonable inferences can be made to any perceived gaps, sufficient to withstand a motion to dismiss. To the extent that the common

law negligence counts only address economic concerns, an amended pleading will be an adequate remedy that does not prejudice either party.

### E. Concessions

Plaintiff concedes that her counts against SIPC for common law negligence, negligent supervision, negligent infliction of emotional distress, and constructive discharge (Counts V, VI, VII, VXI), must be dismissed because Plaintiff did not first bring those claims against SIPC under the D.C. Workers' Compensation Act, D.C. Code § 32-1501 *et seq.* However, Section 32-1514 permits Plaintiff to bring those claims against SIPC under the D.C. Workers' Compensation Act, even after the one-year statute of limitations normally applicable to those claims has expired. Section 32-1514 states in pertinent part as follows: "Where recovery is denied to any person, in a suit brought at law to recover damages in respect of injury or death, on the ground that such a person was an employee and that the defendant was an employer within the meaning of this chapter and that such employer had secured compensation to such employee under this chapter, the limitation of time prescribed in subsection (a) of this section shall begin to run only from the date of termination of such suit." D.C. Code § 32-1514(d). While Section 32-1514(d) refers to the "termination" of Plaintiff's "suit," dismissal of the entire suit is not required. Rather, only dismissal of the common law tort claims (over which DOES has exclusive jurisdiction) is required. *See Lockhart v. Coastal Intern. Sec., Inc.,* 905 F. Supp.2d 105 (D.D.C. 2012). Accordingly, Plaintiff concedes to the dismissal of her Counts V, VI, and VII, against defendant SIPC.

Plaintiff also concedes that her claim of constructive discharge against SIPC (Count XVI) must be dismissed because Plaintiff has not alleged that she was forced to resign due to any discriminatory actions taken against her by SIPC. As the Court in *Adams v. Cochran & Co., Inc.,* 597 A.2d 28 (D.C. Cir. 1991) held, "there is a very narrow exception to the at-will doctrine under

which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation. The burden of proving by a preponderance of the evidence that this was the sole reason shall be on the fired employee." *Id.* at 32. The Court also held that claims of wrongful termination sound in tort, and that the tort is intentional. *Id.* Because Plaintiff's claim of constructive discharge based on SIPC's requirement that she violate the law (the SIPA) sounds in tort, Plaintiff's claim is appropriately adjudicated by DOES under the D.C. Workers Compensation Act.

## Conclusion

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests the following relief:

a. That this Court denies Defendants' Motion to Dismiss Counts I-IV and VIII-XV;

b. And for such other relief as the Court deems appropriate

Dated this 9th day of January 2024.

                                              Respectfully submitted,

*/s/Valerie A. Teachout*
Valerie A. Teachout, Esq. (DC Bar No. 1015719)
THE SPIGGLE LAW FIRM, P.C.
3601 Eisenhower Avenue, Suite 425
Alexandria, Virginia 22304
V. Teachout Direct Line: (571) 513-6942
Main Line: (202) 449-8527
Facsimile: (202) 517-9179
E-mail : vteachout@spigglelaw.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on the 9th day of January 2024, a true copy of the foregoing document has been served via CM/ECF eFiling electronic service to the following:

Carson H. Sullivan
PAUL HASTINGS LLP
2050 M Street N.W.
Washington, DC 20036
carsonsullivan@paulhastings.com

                 */s/Valerie A. Teachout*
                 Valerie A. Teachout, Esq.