**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**ELIZABETH O. FELLEMAN,**

*Plaintiff,*

v.

**SECURITIES INVESTOR PROTECTION
CORPORATION ("SIPC"),** *et al.*

*Defendants.*

Civil Action No. 1:23-cv-02994-JMC

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 2

      A.    PLAINTIFF'S OPPOSITION ONLY REINFORCES DEFENDANTS'
            IMMUNITY FROM LIABILITY ............................................................... 2

            1.    PLAINTIFF HAS NOT PLED LACK OF GOOD FAITH AND
                  THEREFORE CANNOT OVERCOME SIPA'S GRANT OF
                  IMMUNITY TO DEFENDANTS ............................................... 2

            2.    PLAINTIFF'S OPPOSITION DOES NOT SUPPORT DENIAL
                  OF OFFICIAL IMMUNITY ...................................................... 7

      B.    PLAINTIFF CONCEDES HER CLAIMS AGAINST SIPC FOR
            NEGLIGENCE (COUNTS V-VII) AND "CONSTRUCTIVE
            DISCHARGE" (COUNT XVI) MUST BE DISMISSED ........................... 9

      C.    ALL OF PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL
            DEFENDANTS (COUNTS VIII-XV) SHOULD ALSO BE DISMISSED ....... 10

            1.    PLAINTIFF'S CONCESSIONS REGARDING HER
                  NEGLIGENCE CLAIMS AGAINST SIPC NECESSARILY
                  JUSTIFY DISMISSAL OF HER NEGLIGENCE CLAIMS
                  AGAINST THE INDIVIDUAL DEFENDANTS ...................... 10

            2.    PLAINTIFF CONCEDES THAT HER COMMON LAW
                  NEGLIGENCE CLAIMS ARE BARRED BY THE ECONOMIC
                  LOSS DOCTRINE, AND ANY AMENDMENT OF THESE
                  CLAIMS WOULD BE FUTILE ................................................ 12

            3.    EVEN WITHOUT PLAINTIFF'S CONCESSIONS, ALL OF
                  HER NEGLIGENCE CLAIMS FAIL AS A MATTER OF LAW ......... 12

                  A.    NIED (COUNTS IX, XI, XIII, AND XV) .................................. 13

                  B.    COMMON LAW NEGLIGENCE (COUNTS VIII, X, XII,
                        AND XIV) ................................................................ 16

      D.    PLAINTIFF'S OPPOSITION CONFIRMS THE FATAL FLAWS IN
            HER FIDUCIARY DUTY CLAIMS (COUNTS I-IV) ......................... 17

III.  CONCLUSION ............................................................................................ 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Action Network, Inc. v. Gaubatz,*
    793 F. Supp. 2d 311 (D.D.C. 2011) ...............................................................................19, 21

*Bank of New York Mellon Tr. Co. N.A. v. Henderson,*
    107 F. Supp. 3d 41 (D.D.C. 2015) .........................................................................................5

*Beckham v. District of Columbia,*
    No. CIV. A 88-1605-LFO, 1995 WL 368830 (D.D.C. June 14, 1989) ....................................4

*Bilal-Edwards v. United Plan. Org.,*
    896 F. Supp. 2d 88 (D.D.C. 2012) .......................................................................................11

*Boatwright v. Jacks,*
    239 F. Supp. 3d 229 (D.D.C. 2017) .......................................................................................4

*Cahn v. Antioch Univ.,*
    482 A.2d 120 (D.C. 1984) ...................................................................................................19

*Carson v. Sim,*
    778 F. Supp. 2d 85 (D.D.C. 2011) .......................................................................................11

*Clark v. District of Columbia,*
    241 F. Supp. 3d 24 (D.D.C. 2017) .......................................................................................13

*Davis v. Billington,*
    681 F.3d 377 (D.C. Cir. 2012) ...............................................................................................9

*Faktor v. United States,*
    No. 1:20-CV-263 (CKK), 2021 WL 848686 (D.D.C. Mar. 4, 2021) ....................................14

*Farrow v. Cahill,*
    663 F.2d 201 (D.C. Cir. 1980) .............................................................................................19

*Forrester v. White,*
    484 U.S. 219 (1988) ...............................................................................................................8

*Gaubert v. Gray,*
    747 F. Supp. 40 (D.D.C. 1990) ..........................................................................................3, 4

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ..........................................................................................................3, 4, 5

i

*Himmelstein v. Comcast of the Dist., L.L.C.*,
   908 F. Supp. 2d 49 (D.D.C. 2012) .......................................................................18

*Jefferson v. Harris*,
   170 F. Supp. 3d 194 (D.D.C. 2016) ......................................................................9

*Klayman v. Fox*,
   No. CV 18-1579 (RDM), 2019 WL 2396538 (D.D.C. June 5, 2019) .....................6

*Kumar v. George Washington Univ.*,
   174 F. Supp. 3d 172 (D.D.C. 2016) .....................................................................7

*Lee v. Bos*,
   874 F. Supp. 2d 3 (D.D.C. 2012) ........................................................................18

*Li v. Li*,
   No. CV 20-2008 (JMC), 2023 WL 2784872 (D.D.C. Apr. 5, 2023) ....................17

*Lockhart v. Coastal Int'l Sec., Inc.*,
   905 F. Supp. 2d 105 (D.D.C. 2012) ........................................................11, 12, 17

*Metro. Enter. Corp. v. United Techs. Int'l Corp.*,
   No. CIV. 303CV1685JBA, 2005 WL 2300382 (D. Conn. Sept. 21, 2005) ...........19

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91 (2011) ...............................................................................................3

*Mullenix v. Luna*,
   577 U.S. 7 (2015) .........................................................................................3, 4, 5

*Overseas Phila., LLC v. World Council of Credit Unions, Inc.*,
   892 F. Supp. 2d 182 (D.D.C. 2012) ......................................................................6

*Sec. Inv. Prot. Corp. v. Ambassador Church Fin./Dev. Grp., Inc.*,
   788 F.2d 1208 (6th Cir. 1986) ..............................................................................6

*Stevens v. Sodexo, Inc.*,
   846 F. Supp. 2d 119 (D.D.C. 2012) ....................................................................16

*Vanzant v. Washington Metro. Area Transit Auth.*,
   557 F. Supp. 2d 113 (D.D.C. 2008) ....................................................................12

*Vince v. Mabus*,
   956 F. Supp. 2d 83 (D.D.C. 2013) ...........................................................10, 11, 12

*Wood v. Strickland*,
   420 U.S. 308 (1975) ..............................................................................................6

**Statutes**

D.C. Code § 32-1504(b)...................................................................................................10, 11, 12

D.C. Nonprofit Corporation Act ...................................................................................................19

D.C. Workers' Compensation Act ..................................................................................... *passim*

Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa *et seq.*................................. *passim*

**Other Authorities**

Restatement (Third) of Agency ...................................................................................................19

## I.  __INTRODUCTION__

Plaintiff's Opposition ("Opposition") to Defendants' Motion to Dismiss ("Motion")[1] confirms that this case is nothing more than a dispute between an employee and her employer, Defendant Securities Investor Protection Corporation ("SIPC"), about how SIPC managed and carried on the internal development of a new web portal for broker-dealers (the "Portal" and "Portal Project"). Plaintiff admits in her Opposition that she suffered no harm as a result of any launching of the Portal, or by any eventual use of the Portal when operational. *See* Opp. at 11 ("At no point has Plaintiff alleged that she was harmed by the Portal's 'live' status."). In other words, all of the harm Plaintiff allegedly suffered was as a result of the Portal supposedly not being quite right (according to Plaintiff) *while it was still being developed*.

The allegations in Plaintiff's Complaint fall squarely within the immunity from liability to which Defendants are entitled under both specific statute and common law. Allowing Plaintiff's claims to proceed would subject SIPC and its individual officers and Chairperson to onerous discovery and the burdens of standing trial, all for carrying out the duties delegated to them by Congress. This is a result that both statutory and common law immunity are meant to and do preclude.

Even if the Court does not reach the issue of immunity, Plaintiff's Complaint should be dismissed. Plaintiff attempts to transform her workplace complaints related to management of the Portal Project, and Defendants' failure to remedy them to Plaintiff's personal satisfaction, into violations of fiduciary and common law duties that simply do not exist. In her Opposition, she has already conceded that many of the claims in her Complaint must be dismissed. Plaintiff has not set

---

[1] Pursuant to LCvR 7(a), Defendants attached to their Motion to Dismiss a Statement of Points and Authorities in support thereof. *See* ECF No. 9. Citations herein to "Defendants' Motion" or "Mot." refer to the Statement of Points and Authorities.

forth any basis under D.C. law that would allow any of her remaining claims to survive dismissal, nor can she. For all of the reasons stated in Defendants' Motion, and below, Defendants respectfully request that this Court dismiss Plaintiff's Complaint in its entirety, with prejudice.

## II.   ARGUMENT

### A.   Plaintiff's Opposition Only Reinforces Defendants' Immunity from Liability

Defendants are immune from liability under both the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. § 78aaa *et seq.*, and the doctrine of official immunity, and either independently entitles them to dismissal. *See* Mot. at 6-11. Plaintiff's conclusory arguments to the contrary are not supported by the law or the facts she has pled in her Complaint and as such do not and cannot overcome Defendants' entitlement to immunity.

#### 1.   Plaintiff has not pled lack of good faith and therefore cannot overcome SIPA's grant of immunity to Defendants

Plaintiff acknowledges that SIPA grants immunity to SIPC and its directors, officers, and employees from "any liability to any person for any action taken or omitted in good faith under or in connection with any matter contemplated by" the statute. *See* Opp. at 1-2 (citing 15 U.S.C. § 78kkk(c)); Mot. at 6-7 (same). She does not contest that the actions or omissions alleged in her Complaint were "taken or omitted…under or *in connection with…any* matter contemplated by" SIPA, and could not overcome this sweeping plain language. *Compare* Mot. at 7-8 (citing 15 U.S.C. § 78kkk(c)) (emphasis added) *with* Opp. at 1-4. Accordingly, statutory immunity under SIPA applies if the actions or omissions Plaintiff complains of were "taken or omitted in good faith." 15 U.S.C. § 78kkk(c). Despite Plaintiff's suggestion to the contrary, Defendants have by no means argued that they are immune by virtue of Plaintiff's mere failure to "use[] the magic words 'not in good faith.'" Opp. at 2. Plaintiff's Complaint, on its face, demonstrates Plaintiff cannot overcome SIPA's grant of immunity.

Plaintiff does not contest (and seemingly agrees) that the legal standard for "good faith" under SIPA is an objective one. Opp. at 2-3 (citing Mot. at 8 n.2). SIPA's declaration of immunity for "good faith" actions and omissions grants to SIPC and its directors, officers, and employees the same qualified good-faith immunity from suit that government officials enjoy. *See Harlow v. Fitzgerald*, 457 U.S. 800, 807-08 (1982) (discussing evolution of good-faith immunity); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 101 (2011) ("[W]here Congress uses a common-law term in a statute, we assume the term comes with a common law meaning, absent anything pointing another way.") (cleaned up, internal citation omitted). In *Harlow*, the U.S. Supreme Court interpreted good-faith immunity to be determined by an objective reasonableness standard to prevent government officials from being subjected to "the costs of trial or to the burdens of broad-reaching discovery" and in order to "avoid excessive disruption of government and permit the resolution of many insubstantial claims…." *Harlow*, 457 U.S. at 817-18. Under this standard, when immunity is available pursuant to statute or otherwise, officials performing discretionary functions are shielded from liability for civil damages unless they knew or should have known that their conduct was in violation of "clearly established law." *Id.* at 818; *see also* Mot. at 8 n.2 (citing *Norman E. Duquette, Inc. v. Comm'r of I.R.S.*, 110 F. Supp. 2d 16, 22-23 (D.D.C. 2000) (applying *Harlow*'s objective standard to statutory immunity)); *Gaubert v. Gray*, 747 F. Supp. 40, 48 (D.D.C. 1990) ("[T]he crucial question becomes whether the actions that plaintiff alleges the defendants have taken are those which a reasonable official could have believed to be lawful.").

The "clearly established" standard is stringent. In the context of qualified immunity, the Supreme Court has held that "a clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right," and "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v.*

*Luna*, 577 U.S. 7, 11-12 (2015) (cleaned up, internal citation omitted). Furthermore, courts must not "define clearly established law at a high level of generality," for "the dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (cleaned up, internal citation omitted).

At the motion to dismiss phase, Plaintiff must allege facts that plausibly establish Defendants were not acting in good faith—that is to say, that no "reasonable official could have believed" their actions were "lawful." *Gaubert*, 747 F. Supp. at 48; *Harlow*, 457 U.S. at 817-18; *Boatwright v. Jacks*, 239 F. Supp. 3d 229, 233 (D.D.C. 2017) ("In order to defeat qualified immunity at the motion to dismiss stage, plaintiff must allege facts that *plausibly establish* the individual defendants 'knew or should have known that the action [they] took within [their] sphere of official responsibility would violate' plaintiff's rights.") (emphasis added, internal citation omitted); *Beckham v. District of Columbia*, No. CIV. A 88-1605-LFO, 1995 WL 368830, *2 (D.D.C. June 14, 1989) (granting motion to dismiss where challenged disciplinary decision "was not unreasonable and certainly does not rise to the level of deliberate indifference for plaintiff's constitutional rights"). Merely alleging that an official "made mistakes in the discharge of their duties" is not enough. *Gaubert*, 747 F. Supp. at 48 (granting motion to dismiss claims as barred by qualified immunity).

Plaintiff's primary response in her Opposition merely repeats allegations from her Complaint that she claims supposedly amount to lack of good faith. Opp. at 2-3. She argues that these "allegations sufficiently detail the Defendants' actions or omissions, from which this Court must grant her the benefit of the reasonable inference that the Defendants' actions were not being

done in good faith…." *Id*. at 2.[2] But the fact remains that Plaintiff's complaints—on their face—amount to nothing more than disagreements with how SIPC managed and carried out the Portal Project and disappointment with how Defendants responded to her concerns. Such allegations do not and cannot overcome the objective reasonableness standard. Indeed, there is no "clearly established" legal right for an employee to have her employer run or pay for an IT project, or to respond to or investigate employee concerns about that project, in any given way. Plaintiff points to no "clearly established" law—statutory, constitutional, or otherwise—of which "every reasonable official would have understood" that Defendants' particular conduct supposedly violated. *Mullenix*, 577 U.S. at 11 (internal citation omitted); *see also Harlow*, 457 U.S. at 818. She identifies no "existing precedent" that establishes beyond debate the illegality of this conduct in this specific context. *Mullenix*, 577 U.S. at 12. Her claims are not only conclusory—because she fails to plead plausible facts establishing any scheme of fraud, waste or abuse—but also do not remotely establish liability for a violation of "clearly established" legal rights. Because Plaintiff has not pled facts sufficient to show Defendants acted in bad faith under *Harlow*'s stringent and

---

[2] Plaintiff also devotes significant space to copying and pasting portions of her September 2022 letter to Chair Slacik where she raised concerns about the Portal Project. *See* Opp. at 3-4. Plaintiff did not allege fraud in her Complaint, much less fraud with the requisite particularity. *See Bank of New York Mellon Tr. Co. N.A. v. Henderson*, 107 F. Supp. 3d 41, 48 (D.D.C. 2015), *aff'd*, 862 F.3d 29 (D.C. Cir. 2017) (describing heightened pleading standard for fraud). Plaintiff maintains that her Complaint involves more than allegations of "potential fraud" because, in her September 2022 letter, she "specifically cite[d] concerns 'regarding the fraud and waste'" she purportedly observed. Opp. at 3. Plaintiff ignores the point raised in Defendants' Motion: alleging that she wrote a letter expressing concerns about fraud, waste, and abuse—which she admits were later found based on the investigation by Morgan Lewis to be unsubstantiated, Compl. ¶ 75—is not the same as alleging (in Court, through counsel) that fraud, waste, and abuse actually occurred. *See* Mot. at 8 n.3. Presumably, if Plaintiff (through counsel) could have credibly (and in keeping with applicable rules of civil procedure and professional responsibility) alleged that Defendants committed fraud, she would have done so. Her Opposition is notably devoid of any request to amend these allegations, or even a suggestion that she could or would allege fraud with particularity if given leave to amend.

objective standard, SIPA immunity applies and Plaintiff's Complaint should be dismissed in its entirety. *See Sec. Inv. Prot. Corp. v. Ambassador Church Fin./Dev. Grp., Inc.*, 788 F.2d 1208, 1213 (6th Cir. 1986) (reversing and remanding for entry of an order of dismissal where plaintiffs "have not asserted any bad faith on the part of the SIPC").

At times in Plaintiff's Opposition, it seems she may seek the application of a subjective standard of good faith for SIPA's statutory immunity. *See* Opp. at 2-3. This is not the applicable standard, but even if it were, Plaintiff's allegations do not meet it. Pre-*Harlow*, when subjective bad faith was an alternative basis for denying qualified immunity, the Supreme Court required malicious intention to deny immunity. *See Wood v. Strickland*, 420 U.S. 308, 322 (1975) (holding that a school official could be held liable "if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student," and that "[a] compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith"). This Court has required plaintiffs to allege specific facts constituting bad faith in order to survive a motion to dismiss. *See, e.g.*, *Overseas Phila., LLC v. World Council of Credit Unions, Inc.*, 892 F. Supp. 2d 182, 190 (D.D.C. 2012) (granting motion to dismiss claim for breach of duty of good faith where plaintiff failed to plead how breach amounted to violation of established standards); *Klayman v. Fox*, No. CV 18-1579 (RDM), 2019 WL 2396538, at *8 (D.D.C. June 5, 2019) (plaintiff seeking to invoke bad faith exception in a different context must "allege *specific facts* to support an inference of bad faith" that are "sufficient to show [defendant acted] for purposes of harassment or intimidation"), *aff'd sub nom. Klayman v. Lim*, 830 F. App'x 660 (D.C. Cir. 2020). Plaintiff has failed to plead any specific facts showing a subjectively malicious motive for Defendants' actions,

or any other motive that would rise to the level of bad faith. She does not allege, for instance, that Defendants acted out of corrupt self-interest or discriminatory animus. At most, construing the facts in her favor and granting reasonable inferences, her allegations suggest that Defendants acted as they did because they wanted to avoid the Portal Project being stalled or further delayed. This is not enough to draw a reasonable inference of a lack of good faith, even under a subjective standard.

### 2.   Plaintiff's Opposition does not support denial of official immunity

In addition to statutory immunity, Defendants' Motion asserts absolute immunity from tort claims pursuant to the doctrine of official immunity, which extends to non-governmental entities like SIPC "when they are performing 'official' or 'governmental' functions." Mot. at 9 (citing *Kumar v. George Washington Univ.*, 174 F. Supp. 3d 172, 176 (D.D.C. 2016)). "A principal purpose of official immunity is to prevent 'disruption of governmental functions'…[a]nd when private entities perform 'government functions,' 'there is obviously implicated the same interest in getting the Government's work done.'" *Kumar*, 174 F. Supp. 3d at 176. This immunity applies even in the face of allegations of improper motive, bad faith, or fraud. *See* Mot. at 9 (citing *Barr v. Matteo*, 360 U.S. 564, 575 (1959); *Moss v. Stockard*, 580 A.2d 1011, 1020-21 & n. 18 (D.C. 1990)). Here, the alleged wrongful acts of Defendants clearly involve the performance of discretionary official functions pursuant to federal statute, and Plaintiff makes no argument otherwise. Rather, Plaintiff argues that "Defendants…'have the burden of showing that such an exemption is justified by overriding considerations of public policy'" and have failed to show "how the public interest outweighs the potential harm to individual citizens." Opp. at 6 (citing *Forrester v. White*, 484 U.S. 219, 224 (1988)). Public policy considerations, however, fully support the conclusion that Defendants are entitled to absolute immunity.

Whether "considerations of public policy" weigh in favor of applying official immunity is determined by a "'functional' approach," whereby a court "examine[s] the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and [] seek[s] to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Forrester*, 484 U.S. at 223-24.

Applying this "functional approach" here, the conduct Plaintiff complains of falls well within the bounds of official immunity. SIPC has been "lawfully entrusted" with statutory functions and has discretion to exercise those functions and "to do any and all other acts and things as may be necessary or incidental to the conduct of its business" and the exercise of the rights and powers granted by SIPA. *See* Mot. at 7 (describing SIPC's statutory functions). Among other things, these functions include imposing and collecting member assessments, establishing the manner of payment, and addressing over- and underpayments by members, including determining the interest rate and any penalties for underpayments (*see* 15 U.S.C. §§ 78ddd(c) and (e)), which were primary objectives of the Portal Project. Compl. ¶¶ 3, 55. The effect that exposure to liability for performing these actions, including the development of an IT project to aid in the performance of these actions, would have on SIPC's ability to perform the functions delegated to it by Congress would be severe. If SIPC were faced with civil liability for mistakes made in any IT project to help perform its official functions that ran over the initial budget or behind initial schedule, it could be subject to litigation related to its attempts to improve any of its systems. The burdens of defending civil litigation, including discovery and standing trial, would disrupt the efficient operation of SIPC and distract its individual officers and directors from performing its statutory functions.

Plaintiff suggests summarily that the public interest in extending official immunity to Defendants is "arguably" low compared to the supposed harms she has suffered. Opp. at 6-7. She

then claims, in an apparent effort to stand in for all relevant citizens in the analysis, that her own anxiety over the management of an internal IT project should outweigh the public interest in SIPC carrying out that project pursuant to its statutory functions. She cites no authority in support of her position, nor can she. If what she proposes were the case, any and every employee reporting to an official carrying out statutory functions could easily defeat official immunity, rendering the immunity doctrine meaningless.

In sum, whether under SIPA's explicit grant of statutory immunity or the common law doctrine of official immunity, the Court should find Defendants immune from liability for Plaintiff's claims and dismiss her Complaint in its entirety. In addition to the grounds of immunity, Plaintiff's Complaint should be dismissed in its entirety for the reasons stated in Defendants' Motion, and below.[3]

### B.   Plaintiff Concedes Her Claims Against SIPC for Negligence (Counts V-VII) and "Constructive Discharge" (Count XVI) Must Be Dismissed

After Defendants' Motion set out readily available governing D.C. law, Plaintiff concedes in her Opposition that her claims against SIPC for common law negligence (Count V), negligent infliction of emotional distress ("NIED") (Count VI), negligent supervision (Count VII), and

---

[3] While the Court would be well justified here in dismissing on multiple grounds, the Court has the discretion to decline to reach the question of immunity where dismissal is warranted on other grounds. *See Davis v. Billington*, 681 F.3d 377, 388 (D.C. Cir. 2012) (explaining that the Court does not need to consider the qualified immunity issue upon finding plaintiff failed to state a claim for which relief may be granted); *Jefferson v. Harris*, 170 F. Supp. 3d 194, 212 (D.D.C. 2016) (declining to reach qualified immunity argument after accepting other grounds for dismissal of plaintiff's claim).

"constructive discharge" (Count XVI)[4] must be dismissed.[5] Opp. at 13. Plaintiff concedes that all

of these claims are barred by the D.C. Workers' Compensation Act ("WCA"), which provides the

exclusive remedy for work-related injuries.[6] *See* Mot. at 16 (citing *Lockhart v. Coastal Int'l Sec.,*

*Inc.*, 905 F. Supp. 2d 105, 117 (D.D.C. 2012)); Opp. at 13 (same). Because the D.C. Department

of Employment Services "has exclusive jurisdiction" over these claims, Opp. at 13, amendment

would be futile (and Plaintiff mentions no interest in amending); therefore, the Court should

dismiss Counts V-VII and XVI with prejudice. *See Vince v. Mabus*, 956 F. Supp. 2d 83, 92 (D.D.C.

2013) ("The court may dismiss a claim with prejudice when amending the complaint would be

futile.").

---

[4] Plaintiff does not address the fatal flaws with her "constructive discharge" claim raised in Defendants' Motion. *Compare* Mot. at 24-26 *with* Opp. at 13-14. Instead, Plaintiff seems to imply that her claim is really one for wrongful termination, and then concedes that such a claim must be dismissed as barred by the WCA. *See* Opp. at 13-14. Defendants agree that Count XVI should be dismissed, but do not waive their original arguments regarding the insufficiency of Plaintiff's attempted "constructive discharge" claim or any other arguments that could be raised against a wrongful termination or wrongful discharge claim. *See also* Mot. at 24 n.12 (pointing out that Plaintiff did not bring a claim for wrongful termination or wrongful discharge).

[5] Defendants note that Plaintiff, who is represented by counsel, appears to have brought these claims without any regard for governing D.C. law, requiring Defendants to expend time and fees moving to dismiss each of them before making her "concessions."

[6] Plaintiff acknowledges in her Opposition that her common law negligence claim against SIPC should be dismissed due to the WCA bar and thus, though not apparent on the face of her Complaint, that she seeks relief for work-related injuries through this claim. This concession applies with equal force to Plaintiff's common law negligence claims against the individual Defendants; the WCA is the exclusive remedy for covered claims brought against an employer or "any employee, officer, director, or agent of such employer." D.C. Code § 32-1504(b).

### C.    All of Plaintiff's Claims Against the Individual Defendants (Counts VIII-XV) Should Also Be Dismissed

#### 1.    Plaintiff's concessions regarding her negligence claims against SIPC necessarily justify dismissal of her negligence claims against the individual Defendants

Though she concedes that the WCA is an absolute bar to her negligence claims against SIPC, requiring their dismissal, Plaintiff fails altogether to address why the WCA does not bar those same claims (based on the same allegations) against the individual Defendants.[7] It is Plaintiff's burden to show that the WCA does not preempt her claims, and her failure to do so alone warrants the dismissal of her negligence claims against the individual Defendants (Counts VIII-XV). *See Carson*, 778 F. Supp. 2d at 96–97 (dismissing claim where plaintiff failed to meet burden to show the WCA did not preempt it). Furthermore, as with Plaintiff's negligence claims against SIPC, the D.C. Department of Employment Services has exclusive jurisdiction over claims covered by the WCA, rendering any amendment of these claims similarly futile. The Court should therefore dismiss these claims with prejudice. *See Mabus*, 956 F. Supp. 2d at 92.

The WCA is, indeed, the exclusive remedy for her claims of work-related injuries, regardless of whether they are brought against an employer or an individual defendant. *See* D.C. Code § 32-1504(b) ("The compensation to which an employee is entitled under this chapter shall constitute the employee's exclusive remedy against the employer…*and any employee, officer,*

---

[7] Defendants specifically argued in their Motion that the WCA barred Plaintiff's NIED claims against all Defendants, but Plaintiff fails altogether to respond to this argument as to the individual Defendants in her Opposition. *Compare* Mot. at 16-17 *with* Opp. at 10-12. The Court should thus treat Defendants' arguments on these counts as conceded, and this concession, too, is enough to dismiss Counts IX, XI, XIII, and XV. *See Carson v. Sim*, 778 F. Supp. 2d 85, 96–97 (D.D.C. 2011); *Lockhart*, 905 F. Supp. 2d at 118 ("The law is also well-settled in this jurisdiction that 'when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.'").

*director, or agent of such employer*…") (emphasis added). Courts routinely dismiss claims that are barred by the WCA brought against both employers and individual defendants. *See, e.g.*, *Bilal-Edwards v. United Plan. Org.*, 896 F. Supp. 2d 88, 96 (D.D.C. 2012) (granting dismissal of negligent and intentional infliction of emotional distress claims brought against employer and two of its individual directors/officers); *Vanzant v. Washington Metro. Area Transit Auth.*, 557 F. Supp. 2d 113, 118 (D.D.C. 2008) (granting summary judgment in favor of employer and individual supervisor facing tort claims barred by WCA). Based on Plaintiff's concessions that her negligence claims against SIPC are subject to the WCA's exclusive remedy and well-established D.C. law, the Court should dismiss the negligence claims against the individual Defendants (Counts VIII-XV) with prejudice.

> **2.    Plaintiff concedes that her common law negligence claims are barred by the economic loss doctrine, and any amendment of these claims would be futile**

Plaintiff also seems to concede, in a single sentence, that her common law negligence claims against the individual Defendants (Counts VIII, X, XII, and XIV) are barred by the economic loss doctrine. *See* Opp. at 12-13 ("To the extent that the common law negligence counts only address economic concerns, an amended pleading will be an adequate remedy that does not prejudice either party."). However, any amendment to these claims to plead non-economic (i.e., physical or emotional) injuries would be subject to dismissal as barred by the WCA. *See supra* Section II(C)(1); D.C. Code § 32-1504(b) ("The compensation to which an employee is entitled under this chapter shall constitute the employee's exclusive remedy against the employer…and any employee, officer, director, or agent of such employer…"). Because Plaintiff otherwise fails to respond to the argument in Defendants' Motion that the economic loss doctrine bars her common law negligence claims, and because amendment would be futile, Counts V, VIII, X, XII, and XIV should be dismissed with prejudice. *See Lockhart*, 905 F. Supp. 2d at 118, 120 (dismissing

claims where plaintiff failed to respond to arguments raised in motion to dismiss); *Mabus*, 956 F. Supp. 2d at 92.

### 3. Even without Plaintiff's concessions, all of her negligence claims fail as a matter of law

While Plaintiff's concessions alone justify the dismissal of her claims sounding in negligence against both SIPC and the individual Defendants, Plaintiff has also failed to state a claim upon which relief may be granted for any of these claims.[8]

#### a. NIED (Counts IX, XI, XIII, and XV)

Plaintiff's NIED claims against the individual Defendants fail as a matter of law because she has not adequately pled that (1) she had a special relationship with Defendants that "necessarily implicate[d her] emotional well-being" or (2) Defendants' negligence was "especially likely" to cause "serious emotional distress" to Plaintiff. Mot. at 17-19.

As to the first ground, Plaintiff contends, without citation to any authority, that "each individually named [D]efendant undertook obligations to Plaintiff beyond the normal employer-employee relationship…when Plaintiff informed each of them of the dire consequences to her career of her continuing to work on the Portal Project." Opp. at 11. But these allegations, on their face, merely describe an aspect of the employer-employee relationship that exists (or has the potential to exist) in every workplace in America. Employees often raise concerns about projects on which they are working. They may complain that a project is mismanaged, or is causing them stress, or even that it implicates ethical or legal concerns. Raising workplace concerns, however, does not transform the employer-employee relationship into one that "necessarily implicates the

---

[8] Because Plaintiff concedes that her negligence claims against SIPC must be dismissed, Defendants focus this section of their Reply on reasons to dismiss the claims against the individual Defendants. However, Defendants maintain for substantially the same reasons that Plaintiff has failed to state a claim for any of these causes of action against SIPC, too. *See* Mot. at 17-24.

plaintiff's emotional well-being" as is required to sustain a NIED claim. *Clark v. District of Columbia*, 241 F. Supp. 3d 24, 30 (D.D.C. 2017) (internal citation omitted). To say otherwise is flatly contrary to D.C. law, which has consistently held that merely alleging an employer-employee relationship is insufficient to state a claim for NIED. *See* Mot. at 18 (citing *Robinson v. Howard Univ., Inc.*, 335 F. Supp. 3d 13, 31 (D.D.C. 2018), *aff'd sub nom. Robinson v. Wutoh*, 788 F. App'x 738 (D.C. Cir. 2019)); *see also id.* at 18-19 (collecting cases).

As to the second ground, Plaintiff argues that "requiring anyone to violate their ethical obligations or give up their source of income is especially likely to invoke a 'deeply emotional response.'" Opp. at 11 (citing *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789 (D.C. 2011)). There are at least two problems with Plaintiff's argument. First, she points to no authority finding that conduct similar to what she alleges here qualifies as "especially likely" to cause "serious emotional distress" under D.C. law. As Defendants argued in their Motion, an objectively reasonable person would not be "especially likely" to suffer serious emotional distress over disagreements with their employer about an IT system that was still in development and had not even "go[ne] live." Mot. at 19 (citing Compl. ¶ 4). Plaintiff's bald statement in her Opposition that Defendants' actions with respect to the Portal Project "would cause serious emotional distress to the reasonable person" is simply too conclusory to state her claim. *See Faktor v. United States*, No. 1:20-CV-263 (CKK), 2021 WL 848686, at *5 (D.D.C. Mar. 4, 2021) (granting motion to dismiss where plaintiff's claim relied "merely on [] conclusory assertion[s]" that elements of negligence claim were met but she failed to provide any reasoning, facts, or legal authority).

Additionally, it is obvious on the face of Plaintiff's Complaint that no one required her to choose between violating her ethical obligations or resigning from her position. Because the Portal was not live and still in development, Plaintiff *was not required* to use it (and in fact *could not*

14

actually use it) to commit any of the supposed ethical violations that would result from using it. Compl. ¶ 4; *see also id.* ¶¶ 132, 157, 172-73 (alleging that Plaintiff could not perform her role without running afoul of her ethical obligations "*if*" the problems she complained of with the Portal were not remedied).[9] And, after she raised her concerns to Chair Slacik, Plaintiff was given the option to express a preference to be taken off the Portal Project, but she declined to do so, choosing to resign instead. Compl. ¶¶ 75, 98. Any supposed "Hobson's Choice," Opp. at 11, that Plaintiff faced was entirely of her own making, and is not enough to support her NIED claims. Plaintiff states in her Opposition that the "live status" of the Portal "is simply misdirection." *Id*. But Plaintiff's admission that she was not harmed by a "live" Portal status is telling. *See id.* An objectively reasonable person would not be so likely to suffer serious emotional distress in the course of developing an IT project. Such projects necessarily involve coding errors, multiple

---

[9] Plaintiff attempts to substantiate her ethical concerns by citing the Code of Conduct of the American Institute of Certified Public Accountants ("AICPA") and the Code of Ethics and Standards of Professional Conduct of the Chartered Financial Analyst ("CFA") Institute. Opp. at 9, 11; *see also* Compl. ¶¶ 9-10. Even assuming *arguendo* that SIPC's development of the Portal implicated either of these codes, neither required Plaintiff to resign. Under the AICPA Code, among avenues for "further action" in the provision on which Plaintiff attempts to rely is simply "reporting the noncompliance or suspected noncompliance to an appropriate authority," which is an equally available alternative to resigning from the employer. Compl ¶¶ 86(c), 89. Under the CFA Code, the first provision on which she relies requires one to not participate or assist in, and "dissociate" from, any violation of laws, rules, or regulations; Plaintiff elevates this into a draconian requirement to dissociate (resign) from the employer altogether. *Id.* ¶¶ 91, 95, 97. Such a requirement does not exist in the CFA Code, and would not be applicable here in any event because Plaintiff has not alleged any facts sufficient to support a violation of law, rule, or regulation. *See generally* Complaint; *see also supra* n.2. Plaintiff also relies on a second provision of the CFA Code that requires CFA Members to "act for the benefit of their clients and place their clients' interests before their employer's or their own interests." Compl. ¶ 92; *see also id.* ¶¶ 10, 95. But Plaintiff does not (and could not) allege that SIPC's members to whom she claims a CFA obligation were her financial advisory clients. Rather, she nonsensically alleges that they are *SIPC's* "clients," even though SIPC is not a financial advisory firm. *Id.* ¶ 10 (alleging the CFA Code required her to "act for the benefit of SIPC's clients—its members—and to place their interests before SIPC's or her own interests"); *see also id.* ¶¶ 15-16 (describing SIPC's members), 94-95.

rounds of testing, and input from other stakeholders to work out bugs and resolve outstanding issues; if every pre-launch flaw in a not-yet-completed project were considered likely to cause serious emotional distress, no project could ever be completed and employers everywhere would face claims for infliction of emotional distress simply from trying to build, test, refine, and implement new systems. Plaintiff's allegations are insufficient to sustain her claims for NIED against the individual Defendants (Counts IX, XI, XIII, and XV), and for these reasons as well as Plaintiff's concessions detailed above, they should be dismissed.

b.    Common Law Negligence (Counts VIII, X, XII, and XIV)

As discussed above, Plaintiff seemingly admits that her common law negligence claims are barred by the economic loss doctrine. *See supra* Section II(B)(2) (citing Opp. at 12-13). Even if they were not, however, Plaintiff's attempted catchall claims for common law negligence against the individual Defendants also fail to state a claim because, as demonstrated in Defendants' Motion, Plaintiff fails to plead any recognized duty was owed or breached by Defendants. Mot. at 22-23.

Plaintiff's only response on the duty issue is that "[a]ll duties Plaintiff has put in the Complaint fall under the 'reasonably prudent person' standard" and that each individual Defendant "owed the same duty as a reasonably prudent person." Opp. at 12 (citing *Tolu v. Ayodeji*, 945 A.2d 596, 603 (D.C. 2008)). But setting forth the standard of care that would apply in the event a legal duty were owed is not the same as identifying a recognized duty Defendants legally owed to Plaintiff in particular. Plaintiff's Complaint and her Opposition point to no basis in D.C. law for the duties she alleges Defendants owed her. *Compare* Mot. at 22 *with* Opp. at 12. Because Plaintiff "fails to identify any basis in the District of Columbia's common law, or elsewhere, for such duties," her common law negligence claims must fail. *Stevens v. Sodexo, Inc.*, 846 F. Supp. 2d 119, 127-28 (D.D.C. 2012) (granting motion to dismiss negligence claims).

Plaintiff also fails to plausibly allege Defendants breached any of these supposed duties. As set forth above and in Defendants' Motion, Plaintiff's claims here boil down to a notion that Defendants breached a duty to not require Plaintiff to violate her ethical obligations by using the Portal in her job. *See* Mot. at 22. But Plaintiff's Complaint makes clear that Defendants never required Plaintiff to use the Portal, which was still under development at the time she resigned. *See* Compl. ¶ 4. Plaintiff responds in her Opposition that she was "required to assess the data coming out of the Portal" even before the Portal was in use. Opp. at 12. Even if she was so "required," however, it defies common sense to hold that asking an employee to assess an ongoing IT project before it is launched breaches any duty an employer, director, or officer might owe the employee. The Court is not required to draw "inferences…to any perceived gaps," as Plaintiff requests (*id.*), where "such inferences are unsupported by the facts set out in the complaint." *Li v. Li*, No. CV 20-2008 (JMC), 2023 WL 2784872, at *2 (D.D.C. Apr. 5, 2023) (Cobb, J.). Plaintiff's "common law negligence" claims against the individual Defendants (Counts VIII, X, XII, and XIV) should be dismissed.

### D. Plaintiff's Opposition Confirms the Fatal Flaws in Her Fiduciary Duty Claims (Counts I-IV)

Plaintiff's four claims against SIPC for breach of fiduciary duty (Counts I-IV) should be dismissed for all of the reasons set forth in Defendants' Motion. First, Defendants argued in their Motion that "an organization itself does not and cannot owe fiduciary duties" to an employee and that Plaintiff's fiduciary duty claims, which are all brought only against SIPC, should thus be dismissed. Mot. at 11-12 & n.7. Plaintiff fails to address this argument in her Opposition, and as such it should be deemed conceded. *See* Opp. at 7-10; *Lockhart*, 905 F. Supp. 2d at 118. Counts I-IV should be dismissed on this basis alone.

Second, Plaintiff fails entirely to respond to the extensive line of authority holding that "employers generally do not owe a fiduciary duty to their employees." *Compare* Mot. at 11-15 (citing five D.C. cases and referencing an additional five out-of-jurisdiction cases standing for this proposition) *with* Opp. at 7-10. Instead, Plaintiff attempts to confuse the issue by disingenuously implying that Defendants relied on a single case—*Himmelstein v. Comcast of the Dist., L.L.C.*, 908 F. Supp. 2d 49 (D.D.C. 2012)—to argue Plaintiff failed to plausibly allege the existence of a fiduciary duty. *See* Opp. at 8. This is not accurate;[10] nevertheless, Plaintiff has not (and cannot, in light of the facts already pled in her Complaint) adequately allege that any of the Defendants owed her a fiduciary duty. *See* Mot. at 11-16.

While Plaintiff claims that "this Court has found that the employer-employee relationship can at times support a claim for breach of fiduciary duty," she in fact points only to two inapposite cases in support of her argument. Opp. at 9 (citing *Council on Am-Islamic Rels.' Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 341 (D.D.C. 2011) and *Cahn v. Antioch Univ.*, 482 A.2d 120, 131-32 (D.C. 1984)). Both of these cases found that an *employee* may owe a fiduciary duty to their *employer* in certain instances. This is entirely consistent with Defendants' arguments and provides no support to Plaintiff's claims. *See* Mot. at 12-13 (citing, among other cases, *Multicom Inc. v. Chesapeake & Potomac Tel. Co.*, No. CIV.A. 88-1886-OG, 1988 WL 118411, at *4 (D.D.C.

---

[10] *Himmelstein* is one of several cases cited in Defendants' Motion for the proposition that "a party must actively assume or accept a fiduciary duty or otherwise affirmatively extend the relationship beyond a contractual one" in order for a fiduciary relationship to exist. Mot. at 13. Plaintiff argues that *Himmelstein* is inapposite because it involved the confidential relationship required to sustain a constructive fraud claim rather than one for breach of fiduciary duty. Opp. at 8. But the showing required for a "special relationship" under both claims is substantially similar, if not the same, because "[c]onstructive fraud presumes the existence of a fiduciary relationship between the parties." *Lee v. Bos*, 874 F. Supp. 2d 3, 7 (D.D.C. 2012).

Oct. 27, 1988) ("Although it is well established that an agent owes a fiduciary duty to his principal, no corresponding fiduciary duty is owed by a principal to his agent.")).

In *CAIR v. Gaubatz*, this Court denied a former intern's motion to dismiss breach of fiduciary duty claims brought by his *employer*-organization based on allegations that he secured his internship "with the specific intention of inducing Plaintiffs to repose a measure of trust and confidence in him." *Gaubatz*, 793 F. Supp. 2d at 341. The *Gaubatz* court cited to *Cahn* for the broadly stated proposition that a relationship "between [an] employer and employee…under some circumstances may suffice to support a claim for breach of fiduciary duty…." *Id.* (citing *Cahn*, 482 A.2d at 131-32). But a review of *Cahn* well clarifies the broad proposition, as *Cahn* held that former *employees* had fiduciary obligations *to their employer* university, grounded in the fiduciary relationship between an agent (the employees) and principal (the university). *See Cahn*, 482 A.2d at 131-32. Neither of these cases, nor any other authority cited in Plaintiff's Complaint[11] or Opposition, supports the existence of a fiduciary duty owed by an employer to their employee in the circumstances of this case.[12]

Plaintiff's Opposition also points to D.C. cases stating that whether a fiduciary relationship exists is often a fact-intensive inquiry. Opp. at 8-9. That may be true in cases where the existence

---

[11] Plaintiff acknowledges that she lacks standing to bring claims for duties owed to SIPC or its members under the D.C. Nonprofit Corporation Act. *See* Opp. at 10. Her citations to the Act throughout her Complaint therefore provide no support for establishing any duties Defendants owed to Plaintiff. *See* Mot. at 15-16.

[12] Plaintiff makes brief mention of the duty of a principal to "refrain from conduct likely to injure an agent's business reputation" discussed in the Restatement (Third) of Agency. Opp. at 7-8. To the extent this duty exists, it is part of a principal's duty to deal fairly and in good faith; it does not provide a basis for finding a fiduciary duty or relationship exists. *See Metro. Enter. Corp. v. United Techs. Int'l Corp.*, No. CIV. 303CV1685JBA, 2005 WL 2300382, at *10 (D. Conn. Sept. 21, 2005) (holding that while "a principal owes to its agent the duties of good faith and disclosure of known financial risks...there is no authority for the proposition that a principal acts as a fiduciary for its own agent.").

of a fiduciary duty owed to the plaintiff is possible, or the case is on the margins of a previously established fiduciary duty. This is not one of those cases. In a case such as this, where Plaintiff has failed to point to a single instance of a court finding a fiduciary duty was owed to an employee in similar circumstances, dismissal is appropriate. *See Farrow v. Cahill*, 663 F.2d 201, 205 (D.C. Cir. 1980) (affirming dismissal of breach of fiduciary duty claims by plaintiffs who were "merely employees").

This is particularly true where, as here, permitting Plaintiff's claims to proceed would subject any employer to claims for breach of fiduciary duty for engaging in completely ordinary actions in the course of an employment relationship. Plaintiff argues that her claims against SIPC can proceed because each of the individual Defendants formed "the type of 'special confidential relationship' … necessary to create a fiduciary duty" by: (1) speaking with Plaintiff about her concerns related to the Portal Project and relaying those concerns to Plaintiff's manager, (2) taking steps to address issues with the Portal Project raised by Plaintiff, (3) launching an investigation of Plaintiff's concerns about the Portal Project, and (4) listening to Plaintiff's concerns related to her health and ethical obligations. *See* Opp. at 9-10 (pointing to Complaint allegations Plaintiff contends show each individual Defendant "extended the relationship between themselves and Plaintiff, essentially creating a situation to earn her trust"). If these allegations were held to be enough to establish a fiduciary relationship, the general rule that employers do not owe a fiduciary duty to their employees would be turned on its head, and any and all employers could readily become a fiduciary to any employee. In other words, every supervisor or corporate officer who participates in a conversation with an employee about work-related concerns would open the employer up to claims for breach of fiduciary duty; every CEO who listens to an employee's worries and takes steps to address them could become a fiduciary to each such employee; and

every board chair who launches an investigation based on employee allegations could create a fiduciary relationship with that employee. This is not the intent of the cause of action, nor is it supported by *any* District of Columbia case. Plaintiff's allegations about how Defendants received and reacted to her concerns about a work-related project do not "suffice to suggest that the relationship…extended beyond the normal bounds of a contractual relationship to form a special relationship founded upon trust and confidence." *Gaubatz*, 793 F. Supp. 2d at 341-42. Plaintiff has not and cannot plausibly state a claim for breach of fiduciary duty in these circumstances, and thus Counts I-IV against SIPC should be dismissed with prejudice.

## III.   <u>CONCLUSION</u>

In conclusion, Plaintiff's Complaint should be dismissed in its entirety with prejudice for a number of independently sufficient reasons. First and foremost, Defendants are immune from liability for any of her claims under SIPA or, alternatively, the common law official immunity doctrine. *See supra* Section II(A); Mot. at 6-11. In addition, Plaintiff's entire Complaint can and should be dismissed on other grounds. Except for her fiduciary duty claims, she concedes to the dismissal of all of her claims against SIPC (common law negligence, NIED, negligent supervision, and constructive discharge, Counts V-VII and XVI) due to the exclusive remedy provision of the D.C. Workers' Compensation Act. *See supra* Section II(B). Her concessions apply with equal force to justify dismissal of all of her claims against the individual Defendants (common law negligence and NIED, Counts VIII-XV). *See supra* Section II(C)(1)-(2). Even apart from the necessary impact of Plaintiff's concessions on her claims against the individual Defendants—indeed, even if she had not made any concessions at all—all of her claims against the individual Defendants (Counts VIII-XV) fail as a matter of law for the reasons set forth in Section II(C)(3). Last, as to her breach of fiduciary duty claims against SIPC (Counts I-IV), which she has not conceded should be dismissed, those too fail to state a claim upon which relief can be granted and should be dismissed

for the reasons set forth in Section II(D). Defendants thus respectfully request that the Court dismiss Plaintiff's Complaint in its entirety, with prejudice.

Dated: January 23, 2024

Respectfully submitted,

*/s/ Carson H. Sullivan*

Carson H. Sullivan (D.C. Bar No. 488139)
carsonsullivan@paulhastings.com
Madalyn K. Doucet (D.C. Bar No. 1600121)
madalyndoucet@paulhastings.com
PAUL HASTINGS LLP
2050 M Street, N.W.
Washington, D.C. 20036
Telephone:       1(202) 551-1700
Facsimile:       1(202) 551-1705

*Counsel for Defendants*