UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELIZABETH O. FELLEMAN,<br><br>        *Plaintiff*,<br><br>  v.<br><br>SECURITIES INVESTOR PROTECTION CORPORATION, *et al.*,<br><br>        *Defendants*. | Civil Action No. 23-02994 (AHA) |

**Memorandum Opinion**

Plaintiff Elizabeth O. Felleman brought this action alleging various tort claims against her former employer, the Securities Investor Protection Corporation (SIPC), and four SIPC executives. Defendants have moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The motion is granted.

**I.  Background**

For the purpose of resolving this motion, the Court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in favor of Felleman, as the plaintiff. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

**A.  Factual Background**

SIPC is a nonprofit membership corporation created by the Securities Investor Protection Act (SIPA), 15 U.S.C. § 78aaa *et seq.* ECF No. 1 ¶ 15. It oversees the liquidation of its member firms, registered securities brokers and dealers, if they close due to bankruptcy or financial trouble. *Id.* ¶ 16. Felleman worked in SIPC's D.C. office as the Finance Department's investment manager.

*Id.* ¶¶ 14, 26. She managed SIPC's securities portfolio, performing trades and revenue reconciliations and preparing financial reports. *Id.* ¶ 2.

Felleman's claims in this case concern SIPC's creation and development of a broker-dealer portal. *Id.* ¶ 1. The portal was meant to streamline SIPC's processing of membership information and the payment and collection of members' assessments. *Id.* ¶ 3. In September 2019, SIPC entered into a consulting agreement with a third party, InfernoRed Technology, Inc., to develop the portal. *Id.* ¶ 29.

Felleman began to raise concerns about the project soon after that agreement was signed. She suggested changes to certain functions of the portal, but her ideas were summarily dismissed. *Id.* ¶ 35. Felleman also told Defendant Josephine Wang, SIPC's president and CEO, that the Finance Department was being denied access to the portal's database. *Id.* ¶ 36. Wang allowed Finance to access the database, but that access lasted only a few months. *Id.* This was part of a "consistent pattern" of SIPC's IT department and InfernoRed withholding information about the portal from Finance. *Id.*

In May 2020, Felleman asked to add several features to the portal, but those requests were denied. *Id.* ¶¶ 38–43. Several months later, the portal's project manager was removed from the project after complaining to Defendant Wang about InfernoRed's incompetence. *Id.* ¶¶ 46–47. Wang then informed the Finance Department that the portal project was "over budget and behind schedule," so communications would need to be streamlined. *Id.* ¶ 48 (emphasis omitted). Wang restricted communications between non-IT staff members and IT. *Id.* ¶ 50. And SIPC staff members were not permitted to communicate directly with InfernoRed. *Id.* ¶ 52.

In SIPC's 2021 annual report to the Securities and Exchange Commission, Defendant Claudia Slacik, chair of SIPC's board, stated that SIPC expected to deploy the portal in 2022 and

that the portal would facilitate SIPC's back-end processing of information and payments. *Id.* ¶ 55. Felleman told Defendant Karen Saperstein, SIPC's vice president of operations, that this statement was inaccurate because the Finance Department was not expecting any improvements to back-end processing. *Id.* ¶ 56. Defendant Charles Glover, SIPC's vice president of finance, admonished Felleman for her comments. *Id.* ¶ 57. Felleman asked to be removed from the portal project, but Glover denied her request. *Id.*

Felleman met with Defendant Slacik in July 2022 to voice her concerns about the portal project. *Id.* ¶ 58. About one month after that meeting, Felleman sent Slacik a letter that extensively detailed her allegations of fraud and waste in connection with the project. *Id.* ¶¶ 58–60. The letter mentioned, among other things: the flawed design of the portal; issues with project management and the exclusion of the Finance team from the process; potential fraud concerning the project and the contract between SIPC and InfernoRed; and that Felleman had been treated disrespectfully and dismissively. *Id.* ¶ 60. SIPC retained outside counsel to investigate Felleman's allegations. *Id.* ¶ 61.

Felleman raised more concerns about the portal in a later meeting with her direct supervisor and the portal team. *Id.* ¶ 62. When Felleman mentioned issues with certain portal calculations, her supervisor admonished her and said Felleman was making the Finance Department "look bad." *Id.* A few days later, Defendant Glover acknowledged Felleman's frustrations with the project but told her that "we have constraints at SIPC because of management." *Id.* ¶ 63. He also said he knew things were "being done wrong" with the portal and that Defendant Wang was "not doing the right thing." *Id.* ¶ 68 (emphases omitted). The next day, Glover told Felleman that their conversation was confidential and "she should not let the Portal Project get to her." *Id.* ¶ 71.

In November 2022, Defendant Slacik and SIPC's general counsel met with Felleman to share the results of outside counsel's investigation. *Id.* ¶ 75. Slacik told Felleman the investigation

3

did not reveal any evidence of fraud, waste, abuse, or retaliation. *Id.* But the investigation did find "some things about the work environment that we need to work on." *Id.* (internal quotation marks omitted). Felleman responded that she nonetheless believed there was fraud and waste. *Id.*

Around two weeks later, Felleman told Defendant Wang that she could not use the portal because she had no confidence in the integrity of its data. *Id.* ¶ 76. Felleman reiterated her view that certain calculations were improper and that brokers could receive inaccurate numbers. *Id.* ¶ 77. Wang told Felleman that SIPC's lawyers were working on the issue but rejected Felleman's suggestion to have a "finance person" explain the details. *Id.* Instead, Wang asked Felleman to present her concerns to Peraton, newly hired IT consultants who would be taking over the project from InfernoRed after the portal's launch. *Id.* ¶ 78. Felleman presented eight concerns to the Peraton representatives, similar to those in her earlier letter to Slacik. *Id.* ¶ 79. They informed her that three of those issues were beyond their control and that SIPC would need to resolve them. *Id.*

Felleman ultimately determined that continuing to work for SIPC would violate her ethical obligations as an accountant. *Id.* ¶ 94. She resigned in December 2022. *Id.* ¶ 81.

### B. Procedural History

In October 2023, Felleman filed this sixteen-count action against SIPC, Slacik, Wang, Glover, and Saperstein. She alleged breach of fiduciary duties against SIPC (Counts One through Four), *id.* ¶¶ 100–77; negligence, negligent infliction of emotional distress (NIED), and negligent supervision against SIPC (Counts Five through Seven), *id.* ¶¶ 178–217; negligence and NIED against each individual defendant (Counts Eight through Fifteen), *id.* ¶¶ 218–321; and constructive discharge against SIPC (Count Sixteen), *id.* ¶¶ 322–44. The complaint sought damages for back pay, front pay, lost benefits, and emotional, mental, and physical distress. *Id.* at 89.

Defendants moved to dismiss for failure to state a claim under Rule 12(b)(6). ECF No. 9. In response, Felleman conceded dismissal of her claims against SIPC for negligence, negligent supervision, NIED, and constructive discharge (Counts Five, Six, Seven, and Sixteen). ECF No. 13 at 13–14.

## II.    Legal Standard

To survive dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[A] well-pleaded complaint should be allowed to proceed 'even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely.'" *Banneker Ventures*, 798 F.3d at 1129 (second alteration in original) (quoting *Twombly*, 550 U.S. at 556).

## III.    Discussion

The counts remaining fail to state a claim and are also foreclosed by the SIPA, which provides that Defendants cannot be held liable for SIPA-related actions taken in good faith. They accordingly must be dismissed.

### A.    Felleman's Breach Of Fiduciary Duty Claims Fail Because Her Allegations Do Not Show SIPC Owed Her A Fiduciary Duty

Felleman asserts that SIPC breached its fiduciary duties to her through the actions of all four individual defendants. ECF No. 13 at 7–10; *see* ECF No. 1 ¶¶ 100–77. "To make out a claim for breach of fiduciary duty under D.C. law, a plaintiff must show: '(1) the existence of a fiduciary

5

relationship with the defendant; (2) breach of a duty imposed by that fiduciary relationship; and (3) an injury caused by such breach.'" *Jenkins v. Howard Univ.*, 123 F.4th 1343, 1349 (D.C. Cir. 2024) (quoting *Caesar v. Westchester Corp.*, 280 A.3d 176, 186 (D.C. 2022)).

Felleman's complaint fails the first requirement because her allegations do not show SIPC owed her a fiduciary duty. "While it is certainly true and uncontroversial that officers and directors owe fiduciary duties to their respective organizations and to their members or shareholders, it is widely understood that the organizations themselves *do not* owe such duties. Indeed, numerous courts from across the country have rejected that proposition." *Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of United States*, 258 F. Supp. 3d 1, 22 (D.D.C. 2017) (internal citations omitted). And courts have held that an employer-employee relationship generally does not create a fiduciary duty on the part of the employer. *See, e.g.*, *Carswell v. Air Line Pilots Ass'n, Int'l*, 540 F. Supp. 2d 107, 119–20 (D.D.C. 2008) (rejecting pilot's claim that employer airline owed him fiduciary duty); *Reid v. Temple Univ. Hosp. Episcopal Campus*, No. CV 17-2197, 2017 WL 5157620, at *5 (E.D. Pa. Nov. 7, 2017) ("An employer generally does not owe fiduciary duties to its employees."); *cf. Multicom Inc. v. Chesapeake & Potomac Tel. Co.*, CIV. A. No. 88-1886, 1988 WL 118411, at *4 (D.D.C. Oct. 27, 1988) ("Although it is well established that an agent owes a fiduciary duty to his principal, no corresponding fiduciary duty is owed by a principal to his agent." (footnote omitted)).

Felleman asserts that, in some cases, an employer-employee relationship can give rise to a fiduciary duty. ECF No. 13 at 9. But the cases she cites are not analogous. In *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311 (D.D.C. 2011), the plaintiffs plausibly alleged that an intern had breached his fiduciary duty to the organization he worked for. *Id.* at 341–42. Likewise, *Cahn v. Antioch University*, 482 A.2d 120 (D.C. 1984),

6

involved claims that employees had breached fiduciary duties to their employer. *Id.* at 131–32. Neither case involved a claim that an employer organization owed or breached fiduciary duties to an employee.

Nor is the Court persuaded by Felleman's argument that her discussions with the individual defendants created the type of special relationship that can trigger a fiduciary duty. ECF No. 13 at 9. Felleman contends that these discussions "extended the relationship beyond the limits of the contractual obligations." *Id.* (quoting *Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018, 1028 (D.D.C. 1994)). According to Felleman, each defendant "extended the relationship between themselves and [Felleman], essentially creating a situation to earn her trust, to then exercise extraordinary influence over her to silence her concerns." *Id.* at 10. Specifically, Felleman points to her allegations that: (1) Slacik launched an investigation based on Felleman's concerns but then summarily claimed there was no evidence of fraud and waste; (2) Wang placated Felleman but did not address the issues Felleman had raised about the portal; (3) Glover gained Felleman's trust but later admonished her for her concerns and would not remove her from the project; and (4) Saperstein encouraged Felleman to discuss her concerns but then merely relayed the information to Glover and told Felleman to "cheer up." *Id.* at 9–10.

These allegations do not give rise to a fiduciary duty. The Court explained in *Church of Scientology* that "normally a fiduciary duty would not arise from a straightforward contractual arrangement." 848 F. Supp. at 1028. While a duty "could exist under certain circumstances," its existence "would depend on whether the parties, through the past history of the relationship and their conduct, had extended the relationship beyond the limits of the contractual obligations." *Id.* In that case, there was evidence in the record suggesting that the relationship between the relevant parties "was one of great sensitivity, based on trust and confidence." *Id.* Felleman's allegations do

not support a similar conclusion here. She alleges that she brought concerns about a work project to superiors, who chose not to take her recommendations. Those allegations do not suffice to create a fiduciary duty "beyond the limits of the contractual obligations." The complaint therefore fails to state a claim for breach of fiduciary duty.

### B. Felleman's Negligence And NIED Claims Fail Because They Are Barred By The D.C. Workers' Compensation Act

Felleman also brings claims against the individual defendants for negligence and NIED. Defendants argue that these claims are barred by the D.C. Workers' Compensation Act (WCA).

"The WCA provides compensation for '[t]he injury or death [of] an employee that occurs in the District of Columbia if the employee performed work for the employer, at the time of the injury or death, while in the District of Columbia.'" *Harbour v. Univ. Club of Wash.*, 610 F. Supp. 3d 123, 132 (D.D.C. 2022) (first alteration in original) (quoting D.C. Code § 32-1503(a)(1)). "The WCA is an 'employee's exclusive remedy against the employer . . . for any illness, injury, or death arising out of and in the course of his employment.'" *Id.* (omission in original) (quoting D.C. Code § 32-1504(b)). Because the WCA "is the exclusive remedy for work-related injuries, . . . common law tort claims arising from such injuries, such as claims for negligence, negligent or intentional infliction of emotional distress, and assault, are barred in civil actions." *Lockhart v. Coastal Int'l Sec., Inc.*, 905 F. Supp. 2d 105, 117 (D.D.C. 2012).

Felleman does not dispute that she seeks relief for work-related injuries. In fact, she concedes that her negligence, negligent supervision, and NIED claims against SIPC are barred by the WCA. ECF No. 13 at 13. The same logic applies to Felleman's negligence and NIED claims against the individual defendants (and Felleman does not argue otherwise). *See, e.g.*, *Lockhart*, 905 F. Supp. 2d at 117–20 (dismissing work-related tort claims as barred by WCA where plaintiffs failed to respond to defendant's argument regarding exclusivity of WCA remedies); *Carson v. Sim*,

8

778 F. Supp. 2d 85, 96–97 (D.D.C. 2011) (dismissing intentional infliction of emotional distress claim where plaintiff failed to meet burden to show that claim was not barred by WCA). Accordingly, the negligence and NIED claims cannot proceed.[1]

### C. Felleman's Claims Also Fail Because The SIPA Precludes Liability For Actions Taken In Good Faith

Dismissal of all claims is also warranted because the SIPA provides Defendants cannot be held liable for SIPA-related actions taken in good faith. The statute states: "Neither SIPC nor any of its Directors, officers, or employees shall have any liability to any person for any action taken or omitted in good faith under or in connection with any matter contemplated by this chapter." 15 U.S.C. § 78kkk(c). Felleman does not dispute that Defendants' actions were taken in connection with matters contemplated by the SIPA. She argues that the conduct alleged in the complaint shows they did not act in good faith. ECF No. 13 at 2.[2]

Felleman cites several allegations in the complaint to support her claim of bad faith. Those include, among other things: SIPC attempting to silence Felleman when she raised concerns about the portal project; SIPC ignoring Felleman's concerns that data would be destroyed; restriction of communications between non-IT employees and InfernoRed; Defendants admonishing Felleman for pointing out errors in the portal; and Glover's admission that work on the portal was being done incorrectly. *Id.* at 2–3. Felleman also asserts that her letter to Slacik cited specific examples

---

[1] Because the WCA bars Felleman's negligence and NIED claims, the Court need not resolve Defendants' argument that these claims fail on the merits. *See* ECF No. 9 at 17–19, 21–23.

[2] Defendants assert that the term "good faith" should be interpreted "consistent with the standards and criteria governing the defense of qualified immunity in civil rights actions brought under *Bivens* or Section 1983." ECF No. 9 at 8 n.2. Under that objective standard, Defendants argue, they cannot be held liable for actions taken "within their discretionary authority where a reasonable person could have believed that those actions were lawful." *Id.* Felleman invokes the same objective standard. *See* ECF No. 13 at 2–3. Given the parties' apparent agreement that the inquiry into good faith is objective, the Court proceeds on that basis. However, the Court need not import the qualified immunity standard into the statutory framework to resolve this case.

of fraud and waste. *Id.* at 3. In her view, "no reasonable person could believe that requiring an employee to go along with a scheme of fraud, waste, and abuse would be a lawful request." *Id.* at 4.

However, the complaint falls short of plausibly alleging that Defendants acted in bad faith. At bottom, Felleman asserts that she had disagreements with Defendants about how to develop the portal and that Defendants did not respond to her concerns as she would have liked. When Felleman presented accusations of fraud and waste, SIPC retained outside counsel to investigate her claims and found no evidence to support them. ECF No. 1 ¶ 75. The allegations in the complaint do not provide any basis for the Court to conclude that Defendants acted in bad faith. The SIPA accordingly mandates dismissal. *See In re Adler, Coleman Clearing Corp.*, No. 95-08203, 1998 WL 551972, at *32 (Bankr. S.D.N.Y. Aug. 24, 1998) (dismissing complaint that failed to sufficiently allege that SIPC had acted in bad faith); *see also Sec. Inv. Prot. Corp. v. Ambassador Church Fin./Dev. Grp., Inc.*, 788 F.2d 1208, 1213 (6th Cir. 1986) (reversing and remanding for dismissal where plaintiffs failed to allege any bad faith by SIPC).[3]

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is granted. The case is dismissed without prejudice.

A separate order consistent with this decision accompanies this memorandum opinion.

---

[3] Defendants also argue they are entitled to official immunity from Felleman's tort claims because they were performing a "government[al] function" and the conduct at issue was "within the scope of official duties and discretionary in nature." ECF No. 9 at 10 (quoting *Kumar v. George Washington Univ.*, 174 F. Supp. 3d 172, 176–77, 180 (D.D.C. 2016)). Given that Felleman's claims fail on other grounds, the Court need not reach this argument.

                                                                                                 _____

                                                                                                 AMIR H. ALI
                                                                                                 United States District Judge

Date:   January 27, 2025